**Dorothy FLOYD, Plaintiff–Appellant,**

**v.**

**UNITED STATES POSTAL SERVICE, Donald Harants, Postmaster, Defendants–Appellees.**

No. 96–3991.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1996.

Decided Jan. 23, 1997.

Rehearing Denied March 4, 1997.

David A. Friedman (argued and briefed), Kathleen A. Pakes, Taustine, Post, Stosky, Berman, Fineman & Kohn, Louisville, KY, for plaintiff–appellant.

Dorothy Floyd, Cleveland, OH, pro se.

Marcia W. Johnson, Asst. U.S. Attorney, Office of the U.S. Attorney, Cleveland, OH, Barbara L. Herwig, Jacob M. Lewis (argued and briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for defendants–appellees.

Before: MARTIN, Chief Judge, and ENGEL and COLE, Circuit Judges.

BOYCE F. MARTIN, Jr., Chief Judge.

This appeal involves the in forma pauperis scheme that has been revised by Congress in the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, Title VIII, 110 Stat. 1321—66 (PLRA). We are here faced with the question of whether 28 U.S.C.A. § 1915 (1996) allows individuals who are not prisoners to litigate a case without the payment of filing fees. Having reviewed the legislative history of the Act, applied the basic axioms of statutory interpretation, and used a little common sense, we conclude that § 1915 permits individuals who are not incarcerated to continue to proceed as paupers in federal court.

Section 1915(a)(1) provides:

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

The quandary posed by the statute is what Congress intended by the phrase "prisoner possesses."

When the legislation was originally introduced, only minor changes were proposed to this paragraph of the statute. S. 866, 104th Cong. § 2 (1995) (enacted). Throughout the congressional debates, these minimal modifications remained unchanged. 141 Cong.Rec. S7525 (daily ed. May 25, 1995) (statement of Sen. Dole); 141 Cong.Rec. S14416 (daily ed. Sept. 27, 1995) (statement of Sen. Dole). Then, without explanation, the bill's conference report added the phrase "that includes a statement of all assets such prisoner possesses." H.R. Conf.Rep. No. 104–378, at 73 (1995).

■ Despite the use of the term "prisoner possesses," we conclude that a typographical error in the final version of the statute occurred and that Congress actually intended the phrase to be "person possesses." We reach this conclusion from several avenues.

First, the purpose of the PLRA, as reflected by its title, is to curtail inmate litigation. See H.R.Rep. No. 104–378, at 166 (1995) (the prison litigation reforms are intended to "discourage frivolous and abusive prison lawsuits"); see also Green v. Nottingham, 90 F.3d 415, 417 (10th Cir.1996). The emphasis of the title is prison litigation, not pauper litigation.

Furthermore, nowhere in the legislative history of the PLRA is there a modicum of evidence that Congress intended to prevent indigent non-prisoners from proceeding in forma pauperis in the federal courts. To the contrary, the legislation was enacted to require only prisoners to pay the entire sum of their fees and costs. 144 Cong.Rec. S7525 (daily ed. May 25, 1995) (statement of Sen. Dole). Congress expressly wanted to prevent "convicted criminals" from getting "preferential treatment" and to force prisoners to face the same "economic downside" as the "average law-abiding" citizen. *Id.* The thrust of the legislation was to impede inmates from initiating frivolous legal proceedings. Given the plethora of legislative history establishing that the PLRA was applicable only to prisoners, we conclude that Congress did not intend to prevent a non-prisoner from being able to proceed in forma pauperis in federal court.

The rules of statutory interpretation further support this conclusion. When interpreting a statute, we must first look at its text. *United States v. Alvarez–Sanchez,* 511 U.S. 350, 356, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994). If the language of the statute is unambiguous, absent a clearly expressed legislative intent to the contrary, the language of the statute is ordinarily conclusive. *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993). However, in the rare case in which the literal application of the statute will produce a result demonstrably at odds with the intentions of the drafters, the intent of the drafters, rather than the strict language of the statute, controls. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989).

A literal interpretation of the clause "a prisoner possesses" in § 1915(a)(1) would call into question the application of the statute to non-prisoners as the word "who" and "such" create restrictive phrases implicating that only a prisoner can seek pauper status. The intent of Congress, however, was to eliminate pauper status only for incarcerated individuals. In addition, the phrase does not grammatically flow with the remainder of the paragraph. The paragraph uses the specific

noun "prisoner" only once. Given the location of the word, the noun implies that the statute had clarified for the reader that the paragraph applied only to prisoners. However, the statute had previously used the general noun "person" to indicate that the paragraph applied to all individuals and not simply to prisoners. Immediately after the word prisoner, the statute reverts back to the general noun of person. Given the grammatical structure of the paragraph, the only logical conclusion is that Congress intended to use the phrase "person possesses" instead of "prisoner possesses."

The organization of the statute dictates this same conclusion. Section 1915(a)(1) uses the general term "person," with the exception in question. Subsection (a)(2) is more specific. This subsection begins with the phrase "[a] prisoner seeking to bring a civil action...." This subsection requires that an inmate must not only provide the same affidavit of indigency as all other individuals, but the inmate has the additional burden of submitting a certified copy of his prison trust fund account for a six-month period immediately proceeding the filing of the complaint. If Congress had intended paragraph (a)(1) to concern only prisoners, paragraph (a)(2) would be unnecessary. The two paragraphs would have been combined and would have simply stated that a prisoner would be required to file an affidavit of indigency and a trust account statement.

The PLRA also creates § 1915(b). This paragraph states that, notwithstanding § 1915(a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner is required to pay the required filing fees. Again, this section of the statute is restrictive and requires that only a prisoner pay the full filing fees. No mention of other individuals is made in this paragraph. Thus, the provision segregates prisoner litigation from legal actions brought by non-inmate indigent litigants. Given the several specific provisions in § 1915 that explicitly impose additional filing and financial burdens solely on prisoners, the only logical interpretation of the statute is that non-prisoners have the option to proceed in forma pauperis under § 1915(a).

Our conclusion is supported by other authorities. In its version of the statute, LEXIS places the word person in brackets before the word prisoner and then adds an explanatory note which states that "[t]he word 'person' has been inserted in subsec. (a)(1) as the word probably intended by Congress." 28 U.S.C.S. § 1915 (Law. Co-op., LEXIS 1996). In *Leonard v. Lacy,* 88 F.3d 181, 183 (2d Cir.1996), the court indicated the obvious error by stating "such prisoner [sic] possesses."

The United States argues that "all assets such prisoner possesses" means that only a prisoner must file an affidavit of assets. We disagree with this position as such an interpretation would create a needless conflict with Fed.R.App.P. 24. Further, if we were to accept the government's position, non-prisoners who were not truly paupers could avoid payment of the required costs and fees. Requiring all individuals to file an affidavit of assets assures the integrity of the indigency request.

■ Having concluded that non-prisoners are afforded the ability to seek pauper status in federal court and must file an affidavit of indigency, we next address the question of what information must be included in the affidavit. The statute requires, among other information, that the affidavit include "a statement of all assets" that the person possesses. Thus, the plain language of the statute requires that the individual list all of his or her assets. As Form 4 in the Appendix of Forms of the Federal Rules of Appellate Procedure satisfies this statutory mandate, we hold that all individuals seeking pauper status must file this form or an affidavit which contains the same information contained in this form. Failure to file this affidavit mandates that the pauper request be denied. We emphasize that the affidavit must be filed by both prisoners and non-prisoners seeking pauper status. Only prisoners, however, have the additional requirement of filing a prison trust account. *See* 28 U.S.C.A. § 1915(a)(2).

As the district court has certified that Floyd's appeal would not be taken in good faith, we must now address the case's procedural posture. The PLRA has changed the process for appeals which are not taken in good faith. The statute states that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that the appeal is not taken in good faith." 28 U.S.C.A. § 1915(a)(3). We are required to give plain meaning to the language of the statute. *Alvarez–Sanchez,* 511 U.S. at 356-57, 114 S.Ct. at 1603. Thus, if the district court concludes that the appeal is not taken in good faith, the individual may not proceed on appeal as a pauper and is required to pay the entire filing fee.

We are faced, however, with a conflict between the statute and Fed.R.App.P. 24(a). Rule 24(a) provides in part:

If a motion for leave to proceed on appeal in forma pauperis is denied by the district court, or if the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled to proceed in forma pauperis, the clerk shall forthwith serve notice of such action. A motion for leave so to proceed may be filed in the court of appeals within 30 days after service of notice of the action of the district court. The motion shall be accompanied by a copy of the affidavit filed in the district court, or by the affidavit prescribed by the first paragraph of this subdivision if no affidavit has been filed in the district court, and by a copy of the statement of reasons given by the district court for its action.

■ Under § 1915(a)(3), once the district court certifies that an appeal is not taken in good faith, the non-prisoner cannot seek an appeal in forma pauperis. Furthermore, the non-prisoner cannot seek an assessment procedure before this court under § 1915(b)(1) as this section is strictly limited to prisoners. As § 1915(a)(3), which does not permit any appeals to proceed in forma pauperis if the appeal is not taken in good faith, conflicts with Rule 24(a), we must conclude that by enacting the statute Congress intended to supersede the rule and, therefore, the statute controls.

Congress has the authority to regulate matters of practice and procedure in the federal courts. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 9–10, 61 S.Ct. 422, 423–25, 85 L.Ed.

278

479 (1941). Congress delegated some of this power in 1934 by passing the Rules Enabling Act, which gave the Supreme Court the power to promulgate rules of practice and procedure for United States courts. 28 U.S.C. §§ 2071–72. Despite this delegation, Congress maintains a passive, but integral role in implementing any rules drafted by the Supreme Court. All rules are subject to congressional review and become effective only after Congress has had seven months to review the proposed rules or changes. 28 U.S.C. § 2074. The purpose of the review period is to assure that the rules or amendments comply with congressional purpose. *Sibbach,* 312 U.S. at 15, 61 S.Ct. at 427. Although the Supreme Court has some authority to regulate the federal courts, Congress maintains the power to repeal, amend, or supersede the delegation of authority or the rules of procedure. *Jackson v. Stinnett,* 102 F.3d 132, 133 (5th Cir.1996).

■ Congress's ability to amend the Federal Rules of Appellate Procedure is limited in two respects. Under the Rules Enabling Act, "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). Facially, the "abrogation clause" seems to invalidate all federal statutes "in conflict" with court rules. The clause, however, has never been read so broadly. By qualifying the clause to say that the offending statutes will not have further effect after the rule takes effect, the provision requires that the offending statute have some effect before the rule's enacting date. *Jackson,* 102 F.3d at 135. The abrogation clause therefore trumps only statutes passed before the effective date of the rule in question. *Id.*

By contrast, a statute passed after the effective date of a federal rule repeals the rule to the extent of the actual conflict. *Autoskill Inc. v. National Educ. Support Sys., Inc.,* 994 F.2d 1476, 1485 (10th Cir.), *cert. denied,* 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993). The Supreme Court promulgated the Federal Rules of Appellate Procedure on December 4, 1967, with an effective date of July 1, 1968. *See* 43 F.R.D. 61, 67, 113. The Supreme Court last amended Rule 24 on March 10, 1986, with an effec-

tive date of July 1, 1986. Therefore, under the abrogation clause, Rule 24 does not nullify § 1915. Rather, the PLRA, which was passed in 1996, repeals the inconsistent provisions of Rule 24(a). *Jackson,* 102 F.3d at 135.

The second restriction on Congress's power to amend the federal rules is the general disfavor with which courts view implicit amendments or repeals. Absent a clear statement from Congress, we would be reluctant to hold that the PLRA implicitly amends a federal rule. The statute does not mention Rule 24(a), although the law and rule both govern appeals taken in forma pauperis. *Id.*

■ Repeals by implication are not favored by the courts. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442, 107 S.Ct. 2494, 2497–98, 96 L.Ed.2d 385 (1987); *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). However, when provisions of two acts are not reconcilable, the later act constitutes an implied repeal of the earlier statute. *Posadas,* 296 U.S. at 503, 56 S.Ct. at 352. Therefore, to the extent that Rule 24(a) conflicts with the PLRA, we hold that the statute repeals Rule 24(a). *Jackson,* 102 F.3d at 136.

■ Once the district court has certified that an appeal from a non-prisoner would not be taken in good faith under § 1915(a)(3), the district court must notify the individual that he or she may not proceed in forma pauperis on appeal as the individual's appeal is not in good faith. The district court shall notify the individual that he or she has thirty (30) days to pay the entire filing fee to the clerk of the district court or the clerk of this court will dismiss the appeal for want of prosecution. This notice shall also be sent to the clerk of this court. *See* Fed.R.App.P. 3(d). As the statute does not make the payment of the filing fee for an appeal mandatory for non-prisoners, *see* § 1915(b)(1), we conclude that if the appeal is dismissed for want of prosecution, the non-prisoner will not be assessed the filing fee. However, once dismissed for want of prosecution, the appeal will not be reinstated even if the filing fee is subsequently tendered unless the individual dem-

onstrates that he or she did not receive the district court's notice. The individual may seek an extension of time to pay the filing fee if the motion is filed with the district court within the thirty (30) day period. The district court has the discretion to grant or deny the motion depending upon the individual's particular financial circumstances.

As the district court has certified that Floyd's appeal would not be taken in good faith, under § 1915(a)(3), Floyd does not have pauper status before this court. Therefore, Floyd must pay the required filing fee to the clerk of the district court, *see* Fed. R.App.P. (3)(e), within thirty (30) days of the date of this decision or the appeal will be dismissed for want of prosecution.