*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ORBAIN OWENS,

*Plaintiff-Appellant,*

*v.*

No. 03-6559

GEORGE KEELING et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00893—Todd J. Campbell, District Judge.

Argued: June 8, 2006

Decided and Filed: August 29, 2006

Before: MOORE, COLE, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Mary A. Hale, BURCH, PORTER & JOHNSON, Memphis, Tennessee, for Appellant.
Mark A. Hudson, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.
**ON BRIEF:** Mary A. Hale, Jennifer Shorb Hagerman, BURCH, PORTER & JOHNSON,
Memphis, Tennessee, for Appellant. Mark A. Hudson, OFFICE OF THE ATTORNEY GENERAL,
Nashville, Tennessee, for Appellees.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Orbain Owens filed a
complaint pursuant to 42 U.S.C. § 1983 alleging that various officials employed by the Tennessee
Department of Correction ("TDOC"), Defendants-Appellees George Keeling, Charles Szostecki,
Joel Leegon, Jane Doe Weston, John Doe Sarago, and Charles Traughber, and Defendant-Appellee
Tennessee Board of Probation and Parole ("TBOPP") violated his rights to free speech, due process,
and equal protection of the laws, as well as the right to be free from cruel and unusual punishment
under the U.S. Constitution. U.S. CONST. amends. I, VIII, XIV, § 1. The district court dismissed
his complaint for failure to exhaust administrative remedies as required by the Prison Litigation
Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and denied Owens's application to proceed as a
pauper on appeal. Owens appealed both aspects of the judgment and the imposition of a second
filing fee after his first complaint was dismissed for failure to exhaust. Because the district court
erroneously considered the prison's grievance procedure an "available" remedy for Owens's

1

classification-related complaint under the PLRA, 42 U.S.C. § 1997e(a), and failed to consider submissions showing that Owens exhausted the available remedy for classification-related complaints, we **REVERSE** the dismissal of Owens's complaint. We also **HOLD** that a second filing fee should not be assessed to a prisoner whose initial complaint was dismissed without prejudice for failure to exhaust. We **GRANT** Owens in forma pauperis status on appeal.

## I. BACKGROUND

In 2002, Owens was imprisoned in Nashville, Tennessee, at the Middle Tennessee Correctional Complex Annex ("MTCX"). J.A. at 12 (Compl. ¶ 6). On September 9, 2002, George Keeling, a classification coordinator at MTCX, approached Owens and invited him to take part in a voluntary counseling program that TBOPP had recommended. J.A. at 12 (Compl. ¶ 6). The next day, an individual program planner hearing was held pursuant to TDOC Administrative Policies and Procedures ("APP") 508.04 regarding transferring Owens from MTCX to another facility so that he could receive counseling, which was not offered at MTCX. J.A. at 12, 13 (Compl. ¶¶ 7, 11, 14). At this meeting, Owens learned that TBOPP was postponing its consideration of his parole eligibility until he participated in the program. J.A. at 12 (Compl. ¶ 10). On September 13, 2002, a classification panel hearing was held, during which Charles Szostecki, a classification coordinator at MTCX and the chairperson of the panel, told Owens that he was being transferred to the West Tennessee High Security Facility to receive counseling, despite Owens's objection that he should not be transferred because he was incompatible with an inmate already imprisoned there. J.A. at 11, 13 (Compl. ¶¶ 3, 11-15). This same day, Owens filed a Classification Appeal. J.A. at 42-44 (Classification Appeal).

On September 16, 2002, having not yet received any response to his Classification Appeal, J.A. at 14 (Compl. ¶ 22), Owens wrote letters to Donal Campbell, Commissioner of TDOC, regarding his reclassification for mental health treatment and his placement on punitive segregation, J.A. at 45-46 (Owens Letter to Campbell at 1-2), and to Candace Whisman, his work supervisor, *see* J.A. at 47 (Whisman Letter to Owens, Sept. 27, 2002). On September 18, 2002, Owens filed an Inmate Grievance. The following day, Sheila Howard, MTCX grievance chairperson, notified Owens that his "GRIEVANCE IS UNABLE TO BE PROCESSED AS YOU HAVE SUBMITTED DUE TO YOU NOT FOLLOWING POLICY 501.01," and that "[c]lassification matters are inappropriate to Grievance Procedure." J.A. at 23 (Howard Memo.). On September 25, 2002, Owens was transferred to the Northwest Correctional Center Main Compound ("NWCC"), a second reclassification. J.A. at 14 (Compl. ¶ 23). On October 8, 2002, he was moved to the Northwest Correctional Center Annex ("NWCX") to attend the counseling program there. J.A. at 15 (Compl. ¶ 25).

Sometime after his transfer to NWCC and before October 30, 2002, Owens wrote to Fred Raney, then warden of NWCC and NWCX, regarding a transfer back to MTCX. J.A. at 48 (Raney Mem. to Owens). Then Owens again contacted Whisman, and she forwarded Owens's letter to Brandon Maloney, assistant director of classification. J.A. at 41 (Whisman Letter to Owens, Mar. 6, 2003). On March 12, 2003, Maloney sent Owens a letter acknowledging and then denying his transfer request. J.A. at 51 (Maloney Letter to Owens). Maloney suggested that Owens contact Raymond Goodgine, a classification coordinator at NWCC, about his reclassification hearing, but stated that Maloney's office would take no action unless the classification coordinator or his staff recommended a transfer. *Id.* On April 15, 2003, pursuant to Goodgine's advice, Owens wrote a letter to Keeling requesting to be transferred back to MTCX because he had completed his counseling at NWCX. J.A. at 49 (Owens Letter to Keeling). Keeling did not respond. On August 8, 2003, Owens wrote to Tony Parker, then warden of NWCC and NWCX, regarding a transfer back to MTCX. J.A. at 61 (Owens Letter to Parker). Parker forwarded this letter to Goodgine. J.A. at 63 (Goodgine Mem. to Owens). On August 18, 2003, Owens wrote to Howard Cook, TDOC commissioner of operations, regarding a transfer. *See* J.A. at 62 (Owens Letter to Cook). On

August 20, 2003, Goodgine responded to Owens's letter to Parker by explaining that he contacted Keeling regarding Owens's transfer back to MTCX. J.A. at 63 (Goodgine Mem. to Owens). Goodgine included Keeling's response: "'We sent subject there for mental health program at his request for treatment. We did not tell him he could come back after treatment. Per the Parole Board, he is to continue in current treatment and they will see him again 12/2004.'" *Id.* Goodgine concluded: "I sincerely hope this will reinforce the many times I have told you that if MTCX wanted you, they would send a request. By virtue of this letter, I consider this a *finalized issue*." *Id.* (emphasis added).

On June 9, 2003, Owens filed his first complaint in the United States District Court for the Middle District of Tennessee (Docket No. 3:03-cv-00516) alleging violations of his constitutional rights by TDOC officials, which the district court dismissed without prejudice for failure to exhaust. On June 26, 2003, Owens filed a motion for relief from judgment, as well as a supporting brief and documentation. The district judge acknowledged that the documentation attached to Owens's motion "show[ed] that he had fully exhausted his administrative remedies prior to the filing of this action," but denied the motion because "[a] prisoner plaintiff is not allowed to amend his complaint to avoid a sua sponte dismissal." Appellant Br. Ex. B (July 9, 2003 Order).

On August 22, 2003, Owens applied to proceed in forma pauperis in another action (Docket No. 3:03-mc-00085) against the same defendants. This matter was assigned to the same district judge, who denied Owens's application the day it was filed. Owens filed a motion to vacate the judgment denying his application. Owens then moved the district court to stay this motion pending the appeal he filed on October 22, 2003.

On September 25, 2003, Owens filed a third complaint (Docket No. 3:03-cv-00893) raising the same or similar claims. J.A. at 6-22 (Form Compl. at 1-5, Compl. at 2-13). The same district judge once again dismissed the complaint without prejudice for failure to exhaust and denied Owens certification to proceed in forma pauperis on appeal under 28 U.S.C. § 1915(a)(3) because "an appeal from the judgment . . . would not be taken in good faith." J.A. at 71 (Oct. 8, 2003 Order). Owens then timely appealed the October 8, 2003 judgment dismissing his complaint, and that appeal is presently before us. J.A. at 78-79 (Notice of Appeal at 1-2).

## II. EXHAUSTION

### A. Standard of Review

We review de novo a district court's dismissal of a prisoner's suit for failure to exhaust administrative remedies under the PLRA, 42 U.S.C. § 1997e(a). *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001).

### B. Background

Although the PLRA's exhaustion requirement is "a necessary prerequisite to filing prisoner claims in federal court" rather than "jurisdictional," *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), we have directed that district courts can no longer waive the exhaustion requirement, *see Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). The prisoner bears the burden of demonstrating that he administratively exhausted his claim, either by attaching documentation of the relevant administrative decisions or by detailing the process followed and the outcome in the complaint.[1] *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). We have held that the

---

[1]The Supreme Court has granted certiorari in one of our cases, *Jones v. Bock*, 135 F. App'x 837 (6th Cir. 2005), *cert. granted*, --- U.S. --- , 126 S. Ct. 1462 (2006), to decide whether, as we have earlier held, exhaustion under the PLRA is a prerequisite to a prison-conditions suit such that the prisoner must sufficiently plead exhaustion in the

PLRA does *not* require "total exhaustion," and have instead adopted a rule of "partial exhaustion" — that is, when a prisoner files a civil-rights complaint containing exhausted and unexhausted claims, the prisoner can proceed with his exhausted claims despite the dismissal of his unexhausted claims for failure to exhaust. *Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir. 2006) (citing *Burton v. Jones*, 321 F.3d 569, 574 n.2 (6th Cir. 2003); *Hartsfield v. Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999)). *But see Jones Bey v. Johnson*, 407 F.3d 801, 806 (6th Cir. 2005) (holding that the PLRA requires total exhaustion).[2]

TDOC recognizes two separate avenues for pursuing a prisoner's grievance or other complaint that are relevant to this case: (1) the grievance process and (2) the classification appeals process. The grievance process begins with the filing of an "Inmate Grievance." APP 501.01. Under APP 501.01(VI)(G), this "grievance process is inappropriate for: . . . 3. [a]ddressing matters such as institutional placement and custody level, which may be appealed through other avenues outlined in the TDOC #400 policy series, except where policy violations are alleged." The classification appeals process provides a separate remedy for prisoners' complaints regarding classification decisions such as institutional placement and custody level.

Owens began by pursuing his complaint regarding his transfer through the classification appeals process. He also pursued the grievance process by filing an Inmate Grievance. However, once Owens received notice that his Inmate Grievance was non-grievable, he did not pursue any appeals related to his Inmate Grievance because he "correctly determined that the 'Classification Appeal' was the appropriate venue for airing his concern." Appellant Br. at 8. The district court dismissed Owens's complaint for failure to exhaust administrative remedies because he failed to appeal the determination of his Inmate Grievance as non-grievable and because his letter to Campbell "does not constitute an appeal within the meaning of the PLRA." J.A. at 68 (Dist. Ct. Mem. at 5). The district court did not consider Owens's pursuit of the classification appeals process.

## C. Grievance Process

The PLRA states that an action cannot be filed "until such administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). In analyzing the meaning of available remedies under the PLRA, we have previously concluded that "[s]o long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Wyatt*, 193 F.3d at 878. TDOC "has a flat rule declining jurisdiction," *id.*, in its grievance process for grievances that are related to "institutional placement and custody level, which may be appealed through other avenues outlined in the TDOC #400 policy series, except where policy violations are alleged," APP 501.01(VI)(G). Because Owens's complaint

---

complaint or attach proof of exhaustion to the complaint, or instead, whether the defendant must plead and prove an affirmative defense of nonexhaustion. The Supreme Court has previously warned lower courts against imposing heightened pleading requirements in the context of a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). Although we have held that this admonition did not affect our earlier decision regarding the PLRA exhaustion-pleading requirements, *Baxter v. Rose*, 305 F.3d 486, 489-90 (6th Cir. 2002), the Supreme Court's recent reiteration, in the context of a § 1983 *prisoner* claim, that "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts," *Hill v. McDonough*, --- U.S. --- , 126 S. Ct. 2096, 2103 (2006), again calls into question our PLRA exhaustion-pleading requirements.

[2] The Supreme Court has consolidated *Jones v. Bock*, with review of another of our cases, *Williams v. Overton*, 136 F. App'x 859 (6th Cir. 2005), *cert. granted*, --- U.S. --- , 126 S. Ct. 1463 (2006), to determine whether, the PLRA's exhaustion requirement is one of "total exhaustion" requiring a district court to dismiss a prisoner's civil-rights complaint whenever unexhausted claims have been pleaded, despite the inclusion of exhausted claims. In *Williams*, the Court will also consider whether, as we have held, the PLRA mandates that a prisoner name an individual defendant in the administrative grievance in order to exhaust the administrative remedies as to that defendant and in order to maintain the right to sue that defendant. *Id.*

relates to his institutional placement and did not allege a policy violation, it is non-grievable through the grievance process and must instead be pursued through the classification appeals process as outlined in APP 401.08. The non-grievability of Owens's classification-related complaint through the grievance process makes that remedy unavailable under the PLRA, and thus he does not have to pursue that remedy to exhaust his claim. *See Wyatt*, 193 F.3d at 878; *Rancher v. Franklin County, Ky.*, 122 F. App'x 240, 242 (6th Cir. 2005) (holding that a non-grievable issue met *Wyatt*'s "flat rule declining jurisdiction" standard and thus that the prisoner need not pursue the grievance process to exhaust the claim).

The fact that Owens could have appealed this decision, *see* APP 501.01(VI)(G) (stating that "[i]f the chairperson determines a matter to be non-grievable, the grievant may appeal that decision as outlined in the handbook TDOC Inmate Grievance Procedures"), is immaterial because a prisoner is not required to pursue a remedy where the prison system has an across-the-board policy declining to utilize that remedy for the type of claim raised by the prisoner. *See Wyatt*, 193 F.3d at 878. Owens should not be penalized for incorrectly filing an Inmate Grievance regarding his classification because it appears that Owens only resorted to filing an Inmate Grievance after he received no response regarding his pursuit of a remedy through the classification appeals process. Indeed, Owens's decision not to pursue his Inmate Grievance any further was in compliance with TDOC's policy that the subject of his Inmate Grievance was not grievable and that the appropriate remedy for his complaint was the classification appeals process.

## D. Classification Appeals Process

The classification appeals process set forth "in the TDOC #400 policy series" is the proper mechanism by which to appeal "[c]lassification matters such as institutional placement," except when a policy violation is alleged. APP 501.01(VI)(G). The classification appeals process was the correct avenue for Owens to pursue his complaint regarding his transfer, a matter of institutional placement, that did not allege any policy violation.[3,4]

The classification appeals process begins with written notice to an inmate who is being reclassified of a "scheduled hearing before the classification panel." APP 401.08(VI)(A). The classification panel then holds a hearing, and the "[p]anel members shall sign the Classification Summary Form after the majority's recommendations are concisely summarized and justified on the

---

[3] The appellees explain that a policy violation would consist of the prison's "failure to follow the procedures set forth in TDOC Policy #401.08 . . . (e.g., failure to [provide] written notice of classification hearing at least forty-eight hours in advance of hearing)," and that Owens's complaint, which alleged an improper motive on the part of the prison officials in making the classification decision, did not allege a policy violation. Appellees Br. at 7.

[4] Owens argues that he was not required to exhaust the classification appeals process to meet the PLRA's exhaustion requirement because the requirement only applies to "mandatory remedies," and the classification appeals process was not "mandatory." Appellant Br. at 33 n.5. This argument misconstrues the PLRA and this court's precedent. Although a remedy must be "available" in order for a prisoner to be required to pursue it to exhaust his claim, 42 U.S.C. § 1997e(a); *Wyatt*, 193 F.3d 879, this does not mean that the prison must *require* the prisoner to exhaust his remedies for the remedy to be "available." Generally, the prisoner would be free to choose not to exhaust his remedies; he would only be required to do so if he wants to file a complaint regarding the matter in federal court. Therefore, the permissive "may appeal a classification action" language in APP 401.08 is irrelevant to the consideration of the exhaustion issue.

Owens misconstrues *Baker v. Andes*, No. Civ.A.6:04-343, 2005 WL 1140725, at *5 (E.D. Ky. May 12, 2005) (unpublished opinion), the unpublished district court opinion he cites to support his argument on this point. *Baker* held that a grievance system that was "only unpredictably and discretionarily available," was "neither a mandatory nor an available" remedy under the PLRA. *Id. Baker*'s use of "mandatory" in this context, where the prison was only required to answer "'legitimate complaints,'" can best be read to mean that it was not mandatory for the prison to consider the prisoner's grievance, rather than that it was not mandatory for the prisoner to avail himself of the remedy, as Owens reads it. *Id.*

document." APP 401.08(VI)(D). The warden can designate the classification panel chairperson to serve as the final authority for the classification action except when a "custody override is recommended" or "the chairperson is the dissenting member." APP 401.08(VI)(E). A classification action can be appealed within forty-five days of the final action using a "Classification Appeal, CR-3004, to which a copy of the classification documents must be attached." APP 401.08(VI)(G). "When the chairperson is the final authority the inmate may appeal to the warden, who shall either uphold or veto the panel's recommendations; in such cases, the warden's decision is final and the appeal process is exhausted." APP 401.08(VI)(G)(1). "When the warden is the final approving authority, the inmate may appeal to the Director of Classification Programs, who shall either uphold or veto the panel's recommendations; in such cases, the decision of the director is final and the appeal process is exhausted." APP 401.08(VI)(G)(2).

Therefore, under APP 401.08(VI)(G), after the panel hearing and the receipt of the Classification Action Summary, submitting a Classification Appeal is the only procedure required for a prisoner to exhaust the classification appeals process. There is no written notice of the classification panel hearing nor any Classification Summary Form regarding Owens's classification in the joint appendix or in the documents appended to the parties' briefs on appeal, and thus it is uncertain whether Owens was provided with this documentation. In any event, Owens filed a Classification Appeal within the forty-five day limit. J.A. at 42-44 (Classification Appeal). Although Owens did not complete a pre-printed CR-3004 form for his Classification Appeal, he copied the format of the CR-3004 with near perfect precision, and his Classification Appeal follows the CR-3004 in all material respects. Therefore, the fact that his appeal was not made on the pre-printed form has no impact on the exhaustion determination.[5]

Despite Owens's contention that his Classification Appeal was "directed at both the Warden and the Director of Classification Programs," Appellant Br. at 14, by marking a pound sign in the box to the left of "WARDEN" and making no mark next to "DIRECTOR OF CLASSIFICATION PROGRAMS," by writing that he was "appealing the arbitrary decision made by this committee *to the Warden of MTCX and MTCC*," by repeatedly addressing the warden in his appeal letter, and by stating in his complaint that he addressed his appeal to the warden, Owens has indicated that he was addressing his Classification Appeal only to the warden. J.A. at 42-44 (Classification Appeal) (emphasis added), J.A. at 14 (Compl. ¶ 19). To whom the Classification Appeal is addressed matters because the Classification Appeal must be addressed to the person one step above the person who had final authority over the disputed classification action. *See* APP 401.08(VI)(G) (stating that the inmate appeals to the warden if the committee chairperson is the final authority but to the director of classification programs if the warden is the final authority). The evidence provided to this panel does not clearly indicate who the final authority was in Owens's case. It would be fair to assume, however, that Szostecki, the committee chairperson, was the final authority because Owens's case was not one that required the warden to serve as the final authority, *see* APP 401.08(VI)(E), and it appears from Owens's complaint that Szostecki issued the recommendation without the warden's involvement. J.A. at 13 (Compl. ¶ 14). Though the warden of MTCX never responded to Owens's Classification Appeal, J.A. at 14 (Compl. ¶ 22), Owens did everything he could to exhaust this remedy.

Owens met his burden of showing that he administratively exhausted the classification appeals process. In his complaint, Owens asserted that he met with the classification panel and that

---

[5]APP 401.08(VI)(G) requires that "a copy of the classification documents must be attached" to the Classification Appeal. Owens claims that he "filed an Inmate Classification Appeal that [was] not properly . . . answered by prison officials." J.A. at 8. Because Owens has sufficiently "detailed the [administrative grievance] process followed and the outcome in the complaint," *Knuckles El*, 215 F.3d at 642, and "[t]he appellees do not dispute [Owens]'s account of the administrative steps he completed," Appellees Br. at 6 n.1, nor claim that Owens failed to attach the required documentation to his classification appeal, Owens properly exhausted this complaint.

he "filed a classification appeal to the Warden of the Institution,"  J.A. at 13, 14 (Compl. ¶¶ 12-14, 19), and he alerted the court that his complaint was "not properly answered by prison officials." J.A. at 8 (Form Compl. at 3), 14 (Compl. ¶ 22).  In addition, Owens states, *see* Appellant Br. at 14-15, and defendants do not dispute, *see* Appellees Br. at 6 n.1, that he submitted, among other documents, the following documents to the district court:  (1) Owens's Inmate Grievance, dated September 18, 2002, J.A. at 24; (2) Howard's response that Owens's grievance was non-grievable, dated September 19, 2002, J.A. at 23; (3) Owens's Classification Appeal, dated September 13, 2002, J.A. at 42; and (4) Goodgine letter to Owens, dated August 20, 2003, J.A. at 63.  Although the correct procedure to be followed for Owens's classification-related complaint might not have been evident to the district court because the TDOC policies were not submitted to the district court, it is now clear that Owens did exhaust the available administrative remedy:  the classification appeals process.  The complaint and the documents that accompanied it were sufficient for Owens to meet his burden of proving exhaustion.  Owens submitted documentation that the prison determined his Inmate Grievance to be non-grievable and that he filed a Classification Appeal, the proper action to exhaust the classification appeals process.  Owens also submitted a letter from Goodgine stating that he considered Owens's request for a transfer "a *finalized issue*."  J.A. at 63 (Goodgine Mem. to Owens).  The district court erred by failing to consider Owens's pursuit of the classification appeals process and the pleading and documentation that evidenced this pursuit, and thus erroneously concluded that Owens failed to exhaust his administrative remedies.

Finally, even if Owens did not formally exhaust the classification appeals process, we deem him to have exhausted this remedy because he *never* received a response to his Classification Appeal from the warden, the official responsible for reviewing and either upholding or reversing the classification panel's decision under APP 401.08(VI)(G)(1).  *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) (holding "that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance").  Any response Owens did receive from prison officials regarding his transfer was not timely, as the first response specifically addressing his transfer was not until March 12, 2003, J.A. at 51 (Maloney Letter to Owens), and thus was insufficient. *See Boyd*, 380 F.3d at 996.

We need not address Owens's argument that the dismissal of his claim under these circumstances violated his right to due process because the reinstatement of his complaint will prevent any process being denied to him.  We also decline to address the defendants' arguments regarding the sufficiency of Owens's complaint.  This matter is not properly before us as the defendants never filed a motion to dismiss and thus the district court did not consider this issue. After the reinstatement of Owens's complaint, the sufficiency of the complaint can be addressed in the district court should the defendants choose to raise this issue.

## III.  FILING FEES

**A.  Second Filing Fee for Refiling Complaint After Dismissal for Failure to Exhaust**

Owens claims that he should not have to pay a second filing fee for refiling his complaint after it was initially dismissed without prejudice for failure to exhaust.[6]  We agree.  In interpreting the PLRA's exhaustion requirement, we have held that prisoners filing § 1983 cases involving prison conditions "must allege and show that they have exhausted all available state administrative

---

[6]In Owens's second action (Docket No. 3:03-mc-00085), the district court denied Owens's application to proceed in forma pauperis ("IFP").  Although Owens's Notice of Appeal references his filing fee regarding this docket number, it appears that he referenced the wrong docket number, and the Middle District of Tennessee clerk's office corrected the docket number to reflect his third action (Docket No. 3:03-cv-00893).  Because the reference to the second action was in error and because Owens's second action is not before us, we do not address the district court's denial of his IFP application in that action.

remedies."[7]  *Brown*, 139 F.3d at 1104.  We have instructed "[d]istrict courts [to] enforce the exhaustion requirement *sua sponte* if not raised by the defendant" by dismissing the complaint without prejudice when this standard is not met.  *Id.*  The "heightened pleading standards" allow federal courts to determine whether the exhaustion requirement has been met without having to rely on "'time-consuming evidentiary hearings'" and responsive pleadings.  *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) (quoting *Knuckles El*, 215 F.3d at 642).  We have further held that prisoners cannot amend their complaints to cure the failure to satisfy the exhaustion pleading requirement in the initial complaint.  *Id.*  "The bar on amendment . . . serves the purpose of the heightened pleading requirement, permitting courts to assess the fundamental viability of the claim on the basis of the initial complaint.  The possibility of amendment undermines the screening process, preventing courts from efficiently evaluating whether the plaintiff met the exhaustion requirement."  *Id.*

Title 28 U.S.C. § 1914(a) provides that "[t]he clerk of each district court shall require the parties *instituting* any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350 . . . ."[8]  *Id.* (emphasis added).  A prisoner who "refile[s]" a complaint alleging the same claims regarding prison conditions after it was initially dismissed without prejudice for failure to exhaust is not "instituting" a suit, but is merely following the particular procedure chosen by this court for curing the initial complaint's deficiency.  *See Baxter*, 305 F.3d at 489 (requiring courts to "assess the fundamental viability of the claim on the basis of the initial complaint" and "efficiently evaluat[e] whether the plaintiff met the exhaustion requirement").  Therefore, we hold that when a prisoner "refiles" a complaint raising the same prison-conditions claims as a complaint that was initially dismissed without prejudice for failure to exhaust under the PLRA, *id.*, the prisoner need not pay an additional filing fee under 28 U.S.C. § 1914(a).  Thus, we direct the district court to reimburse Owens the $150 he paid when he refiled his complaint in satisfaction of the *Baxter* requirements.[9]

## B.  In Forma Pauperis Status on Appeal

Owens also appeals the district court's order denying his application to file his appeal in forma pauperis ("IFP").  The district court denied the application on the ground that Owens's appeal would not be taken in good faith.  Federal Rule of Appellate Procedure 24(a)(5) governs the procedure for consideration of a request to proceed IFP on appeal after the district court has denied such an application.  It provides that

> A party may file a motion to proceed on appeal in forma pauperis in the court of appeals within 30 days after service of the notice prescribed in Rule 24(a)(4).  The motion must include a copy of the affidavit filed in the district court and the district court's statement of reasons for its action.  If no affidavit was filed in the district court, the party must include the affidavit prescribed by Rule 24(a)(1).

FED. R. APP. P. 24(a)(5).  The Advisory Committee's Note to Rule 24 elucidates that Rule 24(a)(5)

---

[7]As mentioned earlier, in its next Term the Supreme Court will be deciding whether this interpretation of the PLRA's exhaustion requirement is correct or whether nonexhaustion is an affirmative defense that must be raised by the defendant.  *See Jones*, 135 F. App'x at 839, *cert. granted*, 126 S. Ct. at 1462.

[8]At the time that Owens filed his complaints, the filing fee was $150.

[9]We note that a requirement that Owens pay a second filing fee for refiling his complaint is particularly disturbing in this case because the district court's initial sua sponte dismissal of his complaint for failure to exhaust was incorrect; Owens had fully exhausted and should have been able to proceed with his complaint.

establishes a subsequent motion in the court of appeals, rather than an appeal from the order of denial or from the certification of lack of good faith, as the proper procedure for calling in question the correctness of the action of the district court. The simple and expeditious motion procedure seems clearly preferable to an appeal.

FED. R. APP. P. 24(a)(5) 1967 advisory committee's note. The rule, as applied to prisoners in Owens's circumstances, has been explained as follows:

> If the district court certifies that an appeal is not taken in good faith, the appellant may still move in the court of appeals for leave to proceed in forma pauperis. In the case of a prisoner, certification that the appeal is not in good faith allows two choices. The prisoner either may pay the full filing fee and any relevant costs and proceed on appeal for plenary review or contest the certification decision by filing a motion for leave to proceed as a pauper with the court of appeals.

16A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3970 (3d ed. 1999).

In *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), we stated that "a challenge [to a district court's denial of pauper status] does not exist for a prisoner." That was at a time, however, when *Floyd v. United States Postal Service*, 105 F.3d 274 (6th Cir. 1997), was still the law of the circuit. *Floyd*, a non-prisoner case, considered the conflict between the then recently enacted 28 U.S.C. § 1915(a)(3), which provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that the appeal is not taken in good faith," and the version of Rule 24(a) then in effect,[10] which provided for the filing of a motion in the court of appeals for consideration of a request to proceed IFP on appeal after the denial of such a request by the district court. *Id.* at 277-78. *Floyd* held that because "a statute passed after the effective date of a federal rule repeals the rule to the extent of the actual conflict," § 1915(a)(3) controlled, and thus a district court's denial of a motion to proceed IFP on appeal on the ground that the appeal would not be taken in good faith was final. *Id.* at 278. After Rule 24(a)(5) was amended on December 1, 1998 to its current version, we again considered the conflict between Rule 24 and § 1915(a)(3). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). In *Callihan*, another non-prisoner case, we concluded that pursuant to the Rules Enabling Act, which provides that "[a]ll laws in conflict with [the federal] rules [of procedure] shall be of no further force or effect after such rules have taken effect," 28 U.S.C. § 2072(b), the amended Rule 24 trumped the conflicting provision in § 1915(a)(3). 178 F.3d at 803. We thus "abandon[ed] our holding in *Floyd* that once the district court has certified that an appeal from a non-prisoner would not be taken in good faith, the litigant may not proceed in forma pauperis on appeal." *Id.* We held that the party could file, within thirty days of service of the district court's order denying IFP status on appeal, a motion with this court for leave to proceed IFP on appeal in accordance with the procedures set forth in Federal Rule of Appellate Procedure 24(a)(5). *Id.* (overturning in part *Floyd*, 105 F.3d at 277-78).

Given our holding in *Callihan* that Rule 24(a)(5) controls in the face of the conflicting provision in § 1915(a)(3) and given Rule 24(a)(5)'s general reference to "a party" without any suggestion that the rule is limited to non-prisoners, the procedure under Rule 24(a)(5) is available

---

[10]In relevant part, Rule 24(a) then provided that:

If a motion for leave to proceed on appeal in forma pauperis is denied by the district court, or if the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled to proceed in forma pauperis, the clerk shall forthwith serve notice of such action. A motion for leave so to proceed may be filed in the court of appeals within 30 days after service of notice of the action of the district court. The motion shall be accompanied by a copy of the affidavit filed in the district court, or by the affidavit prescribed by the first paragraph of this subdivision if no affidavit has been filed in the district court, and by a copy of the statement of reasons given by the district court for its action.

to all parties. The PLRA's provisions regarding filing fees were "enacted to require only prisoners to pay the entire sum of their fees and costs" and "to impede inmates from initiating frivolous legal proceedings." *Floyd*, 105 F.3d at 276. Allowing prisoners to follow the procedure set forth in Rule 24(a)(5) to file a motion in the court of appeals seeking IFP status on appeal does not infringe upon these goals. Indeed, we routinely grant prisoners' motions to this court pursuant to Rule 24(a)(5) to proceed IFP on appeal. *See, e.g.*, *Bridgeman v. Bureau of Prisons*, 112 F. App'x 411, 413 (6th Cir. 2004) (unpublished order); *Asprilla v. Davis*, 83 F. App'x 86, 88 (6th Cir. 2003) (unpublished order).

In light of Rule 24(a)(5)'s procedure for a subsequent motion to the court of appeals requesting leave to proceed IFP on appeal rather than an appeal of the district court's order denying pauper status on appeal, we have previously held that "[a]ny appeal from a[] [district court's] order denying pauper status on appeal will not be entertained and shall be dismissed sua sponte." *Callihan*, 178 F.3d at 804. In this case, Owens requested this court to allow him to proceed IFP on appeal by listing the district court's order denying him IFP status on appeal in his Notice of Appeal rather than by filing a separate motion with this court.

Explaining its prior precedent, the Supreme Court has stated that

> the requirements of the rules of procedure should be liberally construed and . . . 'mere technicalities' should not stand in the way of consideration of a case on its merits. Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316-17 (1988) (citation omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)). Federal Rule of Appellate Procedure 2 provides that "[o]n its own or a party's motion, a court of appeals may — to expedite its decision or for other good cause — suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)." FED. R. APP. P. 2; *see also Torres*, 487 U.S. at 314. "The purpose of the Rule is to ensure that justice is not denied on the basis of a mere technicality." *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999) (citing FED. R. APP. P. 2 1967 advisory committee's note ("The rule also contains a general authorization to the courts to relieve litigants of the consequences of default where manifest injustice would otherwise result.")).

There is good cause in this case to consider Owens's submission as satisfying the requirements of Rule 24(a)(5). Owens filed his notice of appeal and proceeded pro se in this court within the thirty-day time limit for filing a motion with this court to proceed IPF set by Rule 24(a)(5). We construe filings by pro se litigants liberally. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Owens pursued this matter diligently by filing a notice of appeal that specified as an issue the district court's denial of his application for IFP status on appeal. It is understandable that Owens, a prisoner then proceeding pro se, would not be apprised of the specific procedure that is set forth in Rule 24(a)(5) for pursuing IFP status on appeal after denial of such an application by the district court. As "the Federal Rules of Appellate Procedure were not adopted to set traps and pitfalls by way of technicalities for unwary litigants," *Finch v. City of Vernon*, 845 F.2d 256, 259 (11th Cir. 1988) (internal quotation marks omitted), Owens should have the opportunity to proceed IFP on appeal, particularly when the district court erred in dismissing his application in that court on the ground that the appeal would not be taken in good faith. *See* FED. R. APP. P. 2 1967 advisory committee's note; *Lazy Oil Co.*, 166 F.3d at 587. Moreover, because Owens included this matter in his notice of the appeal, the defendants were on notice of his intent to have this matter reconsidered and thus are not prejudiced by our decision to allow him to do so. The concern about prejudice to the defendants is further alleviated

because whether Owens is entitled to proceed IFP on appeal has no effect on the defendants in this litigation. Therefore, we exercise our authority under Rule 2 to consider Owens's filing as a motion to this court for pauper status under Rule 24(a)(5).

In light of our holding that Owens has exhausted his administrative remedies, we conclude that Owens's appeal was taken in good faith and, based on his affidavit regarding his inability to pay, we grant Owens's request to proceed IFP on appeal. Any costs that were paid to this court in excess of the amount that would have been required under 28 U.S.C. § 1915(b)(1)-(2) shall be refunded to Owens, and the filing fee shall from this point forward be assessed as stated under 28 U.S.C. § 1915(b)(1)-(2). *See McGore*, 114 F.3d at 604-08.

## IV. CONCLUSION

Because the district court improperly focused only on the grievance process and failed to consider Owens's exhaustion of the classification appeals process, we **REVERSE** the dismissal of Owens's complaint. We **HOLD** that a prisoner need not pay an additional filing fee when refiling his complaint in satisfaction of the PLRA's exhaustion requirements after his complaint was dismissed without prejudice for failure to exhaust. We **GRANT** Owens in forma pauperis status on appeal.