Johnny WOODSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–263 C.

United States Court of Federal Claims.

Nov. 9, 2009.

Johnny Woodson, Greenville, IL, pro se.

Robert C. Bigler, United States Department of Justice, Washington, DC, for defendant. Sophia Kil, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC, of counsel.

## OPINION AND ORDER

SWEENEY, Judge.

Before the court are plaintiff's application to proceed *in forma pauperis* and the government's motion to dismiss. In this case, plaintiff Johnny Woodson, proceeding *pro se*, seeks his release from a federal correctional facility and money damages stemming from his alleged wrongful imprisonment. The government moves, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint for lack of subject matter jurisdiction.[1] Although the court afforded plaintiff ample time-over two months-to file a response, he has failed to do so. The court determines that there is no reason to further delay its ruling and, for the reasons set forth below, denies plaintiff's application to proceed *in forma pauperis* and grants the government's motion.

## I. BACKGROUND[2]

On April 13, 1998, plaintiff was convicted of two drug trafficking offenses: (1) distribution of cocaine base, in violation of 21 U.S.C. § 841(a); and (2) conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846. *See United States v. Woodson*, No. 98–3518, 1999 WL 535265 (8th Cir. July 26, 1999); *United States v. Woodson*, No. LR–CR–96–263, 2008 WL 2468683 (E.D.Ark. June 17, 2008); *United States v. Woodson*, No. LR–CR–96–263–1, 2007 U.S. Dist. LEXIS 15553 (E.D.Ark. Mar. 2, 2007). On September 22, 1998, plaintiff was sentenced to 360 months in prison for each count, with the sentences to run concurrently. *See Woodson*, 1999 WL 535265, at *1. Plaintiff, who is currently serving his sentence at the Greenville Federal Correctional Institution in Greenville, Illinois, has filed several appeals and motions in an attempt to overturn his conviction and secure his release from prison. *See In re Woodson*, —— U.S. ——, 128 S.Ct. 954, 169 L.Ed.2d 788 (2008) (denying plaintiff's petition for writ of habeas corpus); *Woodson v. United States*, 552 U.S. 939, 128 S.Ct. 345, 169 L.Ed.2d 242 (2007) (denying plaintiff's petition for writ of certiorari), *reh'g denied*, —— U.S. ——, 128 S.Ct. 972, 169 L.Ed.2d 796 (2008); *Woodson v. United States*, 549 U.S. 965, 127 S.Ct. 411, 166 L.Ed.2d 291 (2006) (denying plaintiff's petition for writ of certiorari); *United States v. Woodson*, 280 Fed.Appx. 568 (8th Cir.2008), *aff'g* No. LR–CR–96–263 JMM, 2008 WL 1826030 (E.D.Ark. Apr.23, 2008); *Woodson*, 2007 U.S. Dist. LEXIS 15553.

On January 22, 2009, plaintiff filed a pleading with the United States District Court for the Eastern District of Arkansas ("Eastern District of Arkansas") that contained two documents: an "Article I Redress of Grievance" ("Grievance") and an "Affidavit in Support of Impeachment of Information Pursuant to PRA 5 USC §§ 552a(e)(5), (g)(1)(c)(d) and (g)(4) Within the Judgment in Above LR–CR–96–263(1)" ("Affidavit"). Compl. Ex. 3. In these documents, which the Eastern District of Arkansas considered as a motion, *see* Compl. Ex. 4, plaintiff sought redress pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a (2006), in order to "impeach[ ] . . . the 'information' utilized to form the judgment and within the Presentence Report that can only be corrected, removed, or otherwise [sic] when having an 'adverse

---

1. Alternatively, the government seeks dismissal of the complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. The court was not required to address this motion.

2. The facts are derived from the complaint and materials attached thereto, the government's motion and accompanying appendix, and matters of public record.

affect', [sic] by this tribunal." [3] Compl. Ex. 3 at 1. In his Grievance, plaintiff claimed that he was provided ineffective assistance of counsel and that the "Record of the Trial Transcripts speak [sic] volumes for itself in the clear and blatant violations of the 5th, 6th, 8th, and 14th Amendments by the mandatory employment of the [federal sentencing] guidelines." *Id.* at 2. In his Affidavit, plaintiff alleged, among other things, that: (1) Special Agent Glen Cook of the Bureau of Alcohol, Tobacco, Firearms and Explosives made false and fraudulent statements during his trial, *id.* at 5 (Affidavit ¶ 6); (2) Special Agent Cook never read plaintiff his *Miranda* rights, *id.;* (3) the Eastern District of Arkansas lacked jurisdiction over his case because "Title[s] 18 and 21 USC were never enacted as Laws of the United States, are non-positive law being unconstitutional," *id.* (Affidavit ¶ 7); (4) he was not challenging his sentence or judgment but rather sought the "impeachment of information utilized in formulating and/or adopting said information to create 'judgment,' " *id.* (Affidavit ¶ 10); and (5) his Eighth Amendment protection against cruel and unusual punishment had been violated, *id.* (Affidavit ¶ 11). Furthermore, plaintiff declared:

> The interested parties, Clerk of Court, JAMES W MC CORMACK or OFFICE HOLDER, JAMES MOODY dba USDJ, replacing ELSIJANE T. ROY, who are in a position to remedy the inaccurate information and issue ORDER OF IMMEDIATE RELEASE are granted [14] days to affirmatively respond to this Affidavit or in the alternative remain silent silent [sic] and your silence will equate to agreement of the presented facts within this Affidavit.... This is an Article I Redress of Grievance Demanding a Response, point for point as presented and Notice to the

Agent is Notice to the Principle is [sic] invoked without prejudice.[4]

*Id.* at 6 (footnote added). Plaintiff claimed that "[a]ny and all information relied upon by the court during and after the trial that has caused an 'adverse affect' [sic] ... must be corrected and new judgment or Order issued granting remedy of Immediate Release and/or Time Served...." *Id.* at 2.

On February 2, 2009, two days before the expiration of plaintiff's self-imposed fourteen-day deadline, Judge Moody issued an order denying plaintiff's motion.[5] Compl. Ex. 4. While Judge Moody acknowledged that plaintiff "wishes to impeach the information found in his Pre–Sentence Report, information that was used at trial, and any information which resulted in his sentence and Judgment," and "seeks immediate release from prison," he determined that such relief was unavailable to plaintiff because the Privacy Act "does not grant this Court jurisdiction to alter a criminal judgment at this stage of a defendant's case." *Id.* On February 20, 2009, plaintiff appealed Judge Moody's order to the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit").[6] Def.'s App. 4, 23–24; *United States v. Woodson,* No. 96–CR–263–JMM, Order (E.D.Ark. Feb. 2, 2009), *appeal docketed,* No. 09–1426 (8th Cir. Feb. 26, 2009).

While his appeal was pending before the Eighth Circuit, plaintiff, on March 31, 2009, filed an "Affidavit of Notice of Default" ("Second Affidavit") with the Eastern District of Arkansas. Compl. Ex. 2. In his Second Affidavit, plaintiff asserted that Mr. McCormack and Judge Moody, along with other individuals employed by the United States, were participants in "a commercial enterprise...." *Id.* at 2 (Second Affidavit ¶ 2). Plaintiff also claimed that the United States "lawfully agreed with this Affiant in

---

3. Plaintiff explicitly indicated that he did not seek an appeal pursuant to 28 U.S.C. § 2255. *See* Compl. Ex. 3 at 1.

4. It appears that the individuals referenced as "interested parties" included: Mr. James W. McCormack, Clerk of Court for the Eastern District of Arkansas; the Honorable James M. Moody; and the Honorable Elsijane T. Roy. *See* Compl. Ex. 4 at 3. The court notes that Judge Roy passed away in 2007.

5. Although dated February 2, 2009, the order was entered on the docket on February 3, 2009. *See* Def.'s App. at 5.

6. The Eighth Circuit ultimately dismissed plaintiff's appeal as untimely. *See United States v. Woodson,* No. 09–1426, Order (8th Cir. Sept. 15, 2009).

the Contract ... Filed January 22, 2009, Page 6 of 7 by failing to respond within the [14] days granted RESPONSE by remaining silent, the agent'[s] acquiescence and therein tacit agreement to theveracity [sic] of presented facts." *Id.* (Second Affidavit ¶ 7). According to plaintiff, his appeal before the Eighth Circuit sought review of the court's failure to comply with his fourteen-day deadline, *id.* (Second Affidavit ¶ 8), and that the individuals named in the Second Affidavit violated their oaths of office and the United States Constitution, *id.* (Second Affidavit ¶ 9). Plaintiff further attested that he has been falsely imprisoned and was entitled to $1.6 million "for every 24 Hour period of False imprisonment from date of arrest, to include IMMEDIATE RELEASE without Prejudice...." *Id.* (Second Affidavit ¶ 10). On April 1, 2009, the Eastern District of Arkansas forwarded plaintiff's Second Affidavit to the Eighth Circuit, where plaintiff's appeal was pending. *See* Def.'s App. 24.

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint in the United States Court of Federal Claims ("Court of Federal Claims") on April 27, 2009.[7] In his complaint, plaintiff seeks "damages [as] the result of the conspiratorial acts by [several] named AGENTS and TRIBUNAL PERSONNEL performing duties in an Administrative Capacity; and tacit agreement of fraud to cause illegal/unlawful imprisonment."[8] Compl. 1. Plaintiff alleges that he was wrongfully imprisoned, *id.*, and that his imprisonment was the result of a conspiracy, fraud, malfeasance, and misconduct by numerous employees and agents of the United States, *id.* at 2 (alleging "facts of fraud, Malfeasance, Malum in se, Official Miscon-

duct"); *see also* Compl. Ex. 1 at 1 ("Definitions of Terms As Used in This Transaction" ("Definitions") ¶ 5 (claiming that the Eastern District of Arkansas fraudulently exercised jurisdiction over his criminal proceedings and that government counsel in his criminal case perpetuated a fraud upon the jury)), 2 (Definitions ¶¶ 7, 10 (claiming that Judges Moody and Roy engaged in "willful or corrupt failure, refusal, or neglect of an officer ... to perform any duty enjoined on him/her by law" and that government informants presented false evidence)). Plaintiff also alleges that the Grievance he filed with the Eastern District of Arkansas constitutes "prima facie evidence ... of [an] Expressed [sic] and Implied Contract...." Compl. 2; *see also* Compl. Ex. 1 at 1 (Definitions ¶ 3 (purporting to define the term "Expressed [sic] and Implied Contract" and referencing his Grievance)). According to the complaint, the government's employees and agents

> had an opt out to correct the inaccurate information in the Tribunal Agency Records having an Adverse Affect [sic] on this Plaintiff, but chose to violate the Oath of Office the liable Parties Swore and/or Affirmed to uphold, justifying this Tribunal to grant remedy as requested ... based upon the Agreement of the UNITED STATES by and through its Agents, that they have failed to state a claim to maintain the continued fraudulent imprisonment of this Plaintiff[.]

Compl. 3. Plaintiff seeks a default judgment, *see id.* at 2, injunctive relief in the form of an order authorizing his immediate release from prison, *id.* at 3, and monetary damages in excess of $7 billion,[9] Compl. Ex. 1 at 3 (Definitions ¶ 16).

---

7. Plaintiff filed his application to proceed *in forma pauperis* on May 22, 2009.

8. Among those individuals plaintiff names as defendants are: Special Agent Cook; Mr. McCormack; Judge Moody; the late Judge Roy; Assistant United States Attorneys Jana K. Harris and Michael D. Johnson; Jenniffer Morris Horan of the Little Rock Federal Public Defender's Office; Sharon Mitchell, whom plaintiff identifies as an agent of the Arkansas Drug Task Force; and Warden W.A. Sherrod of the Greenville Federal Correctional Institution. *See* Compl. 1.

9. According to plaintiff,

monetary damages is the dollar amount of One Million Six Hundred Thousand Dollars for every Twenty–Four hours of False Imprisonment, beginning from day of arrest to current date with an accrual of said [$1,600,000.00] for every subsequent Twenty-four hour of imprisonment until released [sic].
Date of Arrest November 21, 1996 to Current Date April 30, 2009; Total of Four Thousand Five Hundred and Eighty Days [4,580].
**$1,600,000.00 × 4,580 days = $7,328,000,000.00 Dollars**
**Seven Billion Three Hundred Twenty–Eight Million Dollars and No Cents.**

## III. APPLICATION TO PROCEED IN FORMA PAUPERIS

 Plaintiff submitted an application to proceed *in forma pauperis*. Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1326 (1996) (codified in relevant part at 28 U.S.C. § 1915 (2006)), in order "to curtail inmate litigation," *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275 (6th Cir.1997), *superseded by rule on other grounds as stated in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999). Section 1915 provides, in part:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.[10] Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal obtained from the appropriate official of each prison at which the prisoner is or was confined.[11]

28 U.S.C. § 1915(a)(1)-(2) (footnotes added). Section 1915(b) addresses requirements for prisoners bringing a civil action or filing an appeal and contains mandatory language requiring the payment of filing fees:

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, *the prisoner shall be required to pay the full amount of a filing fee.* The court *shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee* of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the *prisoner shall be required to make monthly payments* of 20 percent of the preceding month's income credited to the prisoner's account.

*Id.* § 1915(b)(1)-(2) (emphasis added). Thus, "[i]f a prisoner cannot pay the filing fee immediately upon submission of the complaint," partial payment is permitted "with required subsequent installment payments made from the prisoner's account established with his or her custodian." *Brown v. United States*, 88 Fed.Cl. 795, 798 (2009). Furthermore, notwithstanding any filing fee, or portion thereof, that may have been paid, the court must dismiss a case at any time if it determines that (1) an allegation of poverty

---

Compl. Ex. 1 at 3 (Definitions ¶ 16).

**10.** While the Court of Federal Claims is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia*, the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

**11.** The court notes that section 1915(a)(1) utilizes both the terms "person" and "prisoner," which "raises the issue of whether it applies to both prisoners and non-prisoners." *Hayes v. United States*, 71 Fed.Cl. 366, 366 (2006). This court has previously held that "the right to petition a federal court to proceed *in forma pauperis* applies to both prisoners and non-prisoners." *Id.* at 367. In *Floyd*, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") analyzed the PLRA's legislative history, explaining that the PLRA "was applicable only to prisoners" and that Congress "did not intend to prevent a non-prisoner from being able to proceed in forma pauperis in federal court." 105 F.3d at 276.

is untrue, (2) the action is frivolous or malicious, (3) the action fails to state a claim on which relief may be granted, or (4) the action seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

By enacting section 1915, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Brown v. United States,* 88 Fed.Cl. 322, 330 (2009) (quoting *Denton v. Hernandez,* 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)). As the Sixth Circuit noted, the "emphasis of the [PLRA] is prison litigation, not pauper litigation." *Floyd,* 105 F.3d at 275. It further explained:

> [N]owhere in the legislative history of the PLRA is there a modicum of evidence that Congress intended to prevent indigent non-prisoners from proceeding in forma pauperis in the federal courts. To the contrary, *the legislation was enacted to require only prisoners to pay the entire sum of their fees and costs.* Congress expressly wanted to prevent "convicted criminals" from getting "preferential treatment" and to force prisoners to face the same "economic downside" as the "average law-abiding" citizen.

*Id.* at 276 (emphasis added) (citation omitted). Accordingly, section 1915(b)

> is restrictive and requires that *only a prisoner pay the full filing fees.* No mention of other individuals is made in this paragraph. Thus, *the provision segregates*

*prisoner litigation from legal actions brought by non-inmate indigent litigants.* Given the several specific provisions in [section] 1915 that explicitly impose additional filing and financial burdens solely on prisoners, the only logical interpretation of the statute is that non-prisoners have the option to proceed in forma pauperis under [section] 1915(a).

*Id.* (emphasis added). The requirements of section 1915(b) are reflected in the "Supplemental *In Forma Pauperis* Form For Prisoners" utilized, for example, by the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), which instructs a prisoner to acknowledge and consent to withdrawal of funds from the prisoner's trust account in order to pay the appellate filing fee in its entirety.[12]

■ In his application to proceed *in forma pauperis,* plaintiff indicates, under penalty of perjury, that he has no income or property of value, no cash or money in a checking or savings account, and no other assets. Although plaintiff indicates that his last date of employment was in 1996, he fails to include the amount of his salary and monthly wages, as required in the application. *See* Pl.'s Application Proceed *In Forma Pauperis* 1. He also represents that he received no monies from any source within the past twelve months, *see id.* (representing that plaintiff received no monies from any business; rent payments, interest, or dividends; pensions, annuities, or life insurance payments; gifts or inheritances; or "[a]ny other sources"), though the "Inmate Statement" accompanying his application indicates otherwise.[13] Al-

---

**12.** Specifically, the form requires that the prisoner request and authorize the agency holding the prisoner in custody to furnish a certified copy of the statement of the prisoner's trust fund account or institutional equivalent for the past six months, as well as

> to calculate and disburse funds from my trust fund account (or institutional equivalent) in the amounts specified by 28 U.S.C. § 1915(b). This authorization is furnished in connection with an appeal, and I understand that the total appellate filing fees for which I am obligated are $450 or $455. I also understand that these fees will be debited from my account regardless of the outcome of my appeal. This authorization shall apply to any other agency into whose custody I may be transferred.

Form 6A, "Supplemental in Forma Pauperis Form for Prisoners," *available at* http://www.cafc.uscourts.gov/contents.html (last visited Oct. 20, 2009). The Eighth Circuit requires that prisoners furnish "a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts." "Motion and Affidavit for Permission to Appeal In Forma Pauperis," *available at* http://www.ca8.uscourts.gov/newcoa/forms.htm (last visited Oct. 20, 2009).

**13.** The "Inmate Statement," which lists transactions for the period beginning November 18, 2008, and ending April 28, 2009, appears to have been printed from an Internet website. Although

though the source of deposits to plaintiff's inmate account is unclear, the deposits have been made from sources other than his prison employment. As a result, plaintiff's affidavit is inaccurate and conflicts with the information included in his "Inmate Statement." [14]

■ Whether the court grants or denies plaintiff's application to proceed *in forma pauperis* is immaterial for purposes of section 1915(b)(1), which, as discussed above, "provides that a court must ultimately collect a full filing fee from a prisoner, and, where possible, must collect an initial portion of the fee up front." *Hagan v. Rogers,* 570 F.3d 146, 155 (3d Cir.2009). The "procedures by which a prisoner shall make monthly payments against the balance of the fee," *id.,* are set forth in section 1915(b)(2), also discussed above. Therefore, pursuant to section 1915(b)(1), plaintiff shall be assessed an initial partial filing fee comprising twenty percent of the greater of (1) the average monthly deposits into his account, or (2) the amount representing the average monthly balance in plaintiff's account for the six-month period immediately preceding the filing of his complaint. Thereafter, plaintiff shall be required to make monthly payments of twenty percent of the preceding month's income credited to his account. The agency having custody of plaintiff's account shall forward payments from plaintiff's account to the Clerk of Court each time the account balance exceeds $10.00 and until such time as the filing fee is paid in full.

## IV. SCREENING OF PLAINTIFF'S COMPLAINT

Section 1915A of title 28 of the United States Code requires that the court screen a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must, upon review, identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(1)-(2). Pursuant to section 1915A, the court has undertaken a screening review of plaintiff's complaint. For the reasons discussed in Part VI, *infra,* the court lacks subject matter jurisdiction over the complaint.

## V. LEGAL STANDARDS

### A. *Pro Se* Plaintiff

■ The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching ... to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying ju-

the "Inmate Statement" is not certified, the court is satisfied that this submission complies with the statutory requirement as an institutional equivalent. *See* 28 U.S.C. § 1915(a)(2).

**14.** Additionally, the balance reflected on the "Inmate Statement" suggests that plaintiff had sufficient funds to pay the full amount of the filing fee. In that event, the court would be required to dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A), which provides that the court "shall dismiss the case at any time" if it determines than an allegation of pov-

erty is untrue. Dismissal on this ground is not discretionary. Use of the term "shall" denotes the imperative and connotes a mandatory obligation. *See Merck & Co. v. Hi–Tech Pharmacal Co.,* 482 F.3d 1317, 1322 (Fed.Cir.2007); *Sys. Fuels, Inc. v. United States,* 65 Fed.Cl. 163, 173 (2005). Nevertheless, because plaintiff's affidavit is inaccurate, the court is unable to determine with certainty whether plaintiff's allegation of poverty is untrue and therefore does not dismiss the complaint on this ground.

risdictional requirements), *aff'd*, 98 Fed. Appx. 860 (Fed.Cir.2004). As the court explained in *Demes v. United States*, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

### B. Motion to Dismiss—RCFC 12(b)(1)

Subject matter jurisdiction, which is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case," *Matthews*, 72 Fed.Cl. at 278, may be challenged at any time by the parties, by the court *sua sponte*, or on appeal, *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir. 2004). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The court "consider[s] the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995) (recognizing the court's obligation to "assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor"); *cf. Betz v. United States*, 40 Fed.Cl. 286, 290 (1998) (noting that the court is not required to accept plaintiff's framing of the complaint and that it should "look to plaintiff's factual allegations to ascertain the true nature of the claims").

A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748, and needs only set forth a *prima facie* showing of jurisdictional facts to survive a motion to dismiss, *Raymark Indus., Inc. v. United States*, 15 Cl.Ct. 334, 338 (1988). Where a defendant or the court challenges jurisdiction, "the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction." [15] *Murphy v. United States*, 69 Fed. Cl. 593, 600 (2006). The court may consider matters outside the pleadings when examin-

ing jurisdiction. *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed.Cir. 1993); *see also Reynolds*, 846 F.2d at 748 ("If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute."). If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews*, 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

The court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006) (citations & quotation marks omitted); *accord Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001). Courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

### C. The Tucker Act

The Court of Federal Claims is a court of limited jurisdiction. *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed.Cir.2006) (citing *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. *King*, 395 U.S. at 4, 89 S.Ct. 1501. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fid. Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *King*, 395 U.S. at 4, 89 S.Ct. 1501. Unless Congress

---

**15.** As noted above, plaintiff did not respond to defendant's motion to dismiss. Therefore, plain-

tiff has not brought forth any proof that would establish jurisdiction in this court.

consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

 The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it " 'itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.' " *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 875 (Fed.Cir.2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc portion)). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc). The court "may not entertain claims outside this specific jurisdictional authority." *Adams v. United States*, 20 Cl.Ct. 132, 135 (1990).

## VI. DISCUSSION

### A. The Court Lacks Jurisdiction Over Claims Against Parties Other Than the United States

 Although plaintiff seeks monetary damages for breach of an alleged contract arising out of the January 22, 2009 pleading he filed with the Eastern District of Arkansas, plaintiff names the United States Sentencing Commission and various individuals as defendants. *See* Compl. 1. "When a plaintiff's complaint names private parties, or

state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations." *Shalhoub v. United States*, 75 Fed.Cl. 584, 585 (2007) (citing *Stephenson v. United States*, 58 Fed.Cl. 186, 190 (2003)); *see also United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Nat'l City Bank of Evansville v. United States*, 143 Ct.Cl. 154, 163 F.Supp. 846, 852 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)). Moreover, the Tucker Act, which confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a)(1), "grants the Court of Federal Claims jurisdiction over suits against the United States, *not against individual federal officials*," *Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir. 1997) (emphasis added). As such, the court must dismiss these claims for lack of jurisdiction.

### B. The Court Lacks Jurisdiction to Entertain Tort–Based Claims

 Plaintiff's complaint appears to contain allegations of fraud, conspiracy, false imprisonment, and claims of misconduct and malfeasance. *See* Compl. 1–3. These allegations all sound in tort, *see* Compl. Ex. 2 at 3 (Second Affidavit ¶ 11 (seeking monetary damages "for Tort")), and the Court of Federal Claims is without jurisdiction to entertain tort-based claims, *see* 28 U.S.C. § 1491(a)(1); *see also Brown*, 105 F.3d at 623 (indicating that fraud is a tort over which the Court of Federal Claims lacks jurisdiction); *Schweitzer v. United States*, 82 Fed.Cl. 592, 595 (2008) (stating that the Court of Federal Claims lacks jurisdiction over claims challenging "indictments, arrests, prosecutions,

convictions, imprisonment, or parole"); *Gant v. United States*, 63 Fed.Cl. 311, 316 (2004) (stating that claims of conspiracy sound in tort "because the acts that furthered the goal of the conspiracy themselves sound in tort"); *Campbell v. United States*, 38 Fed.Cl. 524, 531 (1997) (determining that "acts of malfeasance and fraud on the part of government officials" are tort-based allegations over which the court lacks jurisdiction). Therefore, the court is unable to entertain and must dismiss plaintiff's tort-based claims.

### C. The Court Lacks Jurisdiction Over Claims Arising From the Criminal Justice System

■ Plaintiff alleges that his January 22, 2009 filing constituted an agreement wherein the United States acknowledged that (1) he was deprived of a fair trial and impartial jury, (2) his trial was tainted by false and fraudulent statements that prejudiced him, and (3) he was unlawfully deprived of his *Miranda* rights. *See* Compl. Ex. 2 at 2 (Second Affidavit ¶ 7 (contending that the interested parties plaintiff named "lawfully agreed with ... [his] January 22, 2009 [filing] by failing to respond ... [and therefore evidencing] therein tacit agreement to theveracity [sic] of presented facts")). Any alleged agreement with plaintiff would have arisen from the criminal justice system, and plaintiff's tort-based claims—conspiracy, fraud, perjury, and malfeasance-implicate the federal criminal code. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed.Cir.1994). The Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code," *id.; see also Matthews*, 72 Fed.Cl. at 282 ("This court lacks jurisdiction to adjudicate criminal claims."), and must therefore dismiss any claims related to an alleged contract concerning plaintiff's criminal convictions and sentence for lack of subject matter jurisdiction, *see Kania v. United States*, 227 Ct.Cl. 458, 650 F.2d 264, 268 (1981) (explaining that it is "unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive busi-

ness of conducting criminal trials"). The jurisdiction of the Court of Federal Claims "in the contract area is generally limited to those cases in which the government acts in its non-sovereign capacity." *Sadeghi v. United States*, 46 Fed.Cl. 660, 662 (2000). "Because administering the criminal justice system is an activity that lies at the heart of sovereign action, breach of contract arising out of the criminal justice system does not ordinarily give rise to an action under the Tucker Act for damages." *Id.* Thus, any alleged breach of an agreement unique to the criminal justice system must be brought in the appropriate court. *Sanders v. United States*, 252 F.3d 1329, 1336 (Fed.Cir.2001).

■ As the United States Claims Court acknowledged,

> [t]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

*Kania*, 650 F.2d at 268. Nevertheless, a plaintiff may establish jurisdiction in this court for a claim "integrally related to a criminal proceeding" if "it is clear that when the government entered into the agreement: (1) the government agents possessed the authority to bind the government to pay money and (2) specific monetary liability had been clearly intended as compensation by the parties in the event of a breach." *Pappas v. United States*, 66 Fed.Cl. 1, 6 (2005) (citing *Kania*, 650 F.2d at 268). In this case, both elements are absent.

■ First, plaintiff does not allege that any of the individuals personally named in the complaint possessed any authority to bind the government.[16] "Without such spe-

---

16. For this reason, plaintiff has also not properly alleged the existence of an implied-in-fact con-

tract with the government. *See El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990)

cific authority, this Court has generally held that it does not possess subject matter jurisdiction over agreements made in the course of criminal proceedings. . . ." *Awad v. United States,* 61 Fed.Cl. 281, 285 (2004). Plaintiff has made no effort to show how any of the parties he names in his complaint had actual authority to enter into a binding contract with him. Although Judge Moody could have overturned plaintiff's conviction or provided alternative relief, plaintiff does not allege—and nothing in the record indicates— that Judge Moody assented to the statements contained in the January 22, 2009 pleading. To the contrary, Judge Moody treated plaintiff's filing as a motion and entered the February 2, 2009 order denying plaintiff relief. *See* Compl. Ex. 4. Furthermore, Mr. McCormack, as the Clerk of Court for the Eastern District of Arkansas, "exercise[s] the powers and perform[s] the duties assigned to [him] by the court." 28 U.S.C. § 956. Without explicit instruction from Judge Moody, Mr. McCormack lacks the authority to overturn a conviction or to enter into an agreement that would impose any liability upon the United States. On this basis alone, plaintiff has failed to demonstrate that the court possesses jurisdiction over his claim.

■■■ Second, plaintiff has not demonstrated that his January 22, 2009 pleading contained any promise by the United States to subject itself to monetary liability. Nothing contained in plaintiff's January 22, 2009 pleading discusses money damages or payment by the United States.[17] *See Awad,* 61 Fed.Cl. at 286 (noting that the plaintiff "alleges no language, explicit or otherwise, requiring the government to pay monetary damages upon breach" of the alleged agreement at issue). Because such liability "should not be implied, and could exist only if

(setting forth the elements required to show an implied-in-fact contract with the government, which include: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) the government representative whose conduct is relied upon had actual authority to bind the government).

17. Plaintiff's January 22, 2009 pleading imposed an arbitrary, fourteen-day deadline upon the

there was an *unmistakable promise* to subject the United States to monetary liability," *Sanders,* 252 F.3d at 1336 (emphasis added), the court lacks jurisdiction over plaintiff's claim.

### D. The Court Lacks Jurisdiction to Provide Injunctive Relief

■■■ Plaintiff, as discussed above, seeks his release from prison. Compl. 2. The court lacks the authority to grant such equitable relief. *See Bowen v. Massachusetts,* 487 U.S. 879, 905, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The Court of Federal Claims can only award equitable relief that is "incidental to and collateral to a claim for money damages." *Bobula v. U.S. Dep't of Justice,* 970 F.2d 854, 858–59 (Fed.Cir.1992); *see also Simanonok v. Simanonok,* 918 F.2d 947, 952 (Fed.Cir.1990) (stating that claims for injunctive relief are "not cognizable in a . . . Tucker Act case, absent a concurrent colorable claim for monetary recovery" (citing *Richardson v. Morris,* 409 U.S. 464, 465–66, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (per curiam))). Plaintiff does not have a colorable claim for monetary recovery, and the court therefore lacks jurisdiction to award equitable relief in this case.

### E. Plaintiff's Pending Appeal Before the Eighth Circuit Divests This Court of Jurisdiction Over His Complaint

■■■ The court notes that plaintiff's appeal before the Eighth Circuit was pending at the time he filed his complaint in the Court of Federal Claims. As such, the court is obligated to dismiss the complaint pursuant to section 1500. 28 U.S.C. § 1500. Section 1500 provides, in relevant part: "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or

Eastern District of Arkansas such that its failure to respond purportedly constituted assent to plaintiff's contentions that he was wrongfully convicted and imprisoned. Plaintiff had no authority to impose any deadline upon the Eastern District of Arkansas, and his deadline was meaningless. The court construes this pleading as nothing more than a mechanism to overturn or extinguish plaintiff's criminal conviction.

·process against the United States." In *Keene Corp. v. United States,* the United States Supreme Court, which interpreted the term "claim" in section 1500, held that "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). The Federal Circuit, in *Loveladies Harbor, Inc.,* held that the Court of Federal Claims is precluded from hearing a claim under section 1500 where "the claim pending in another court must arise from *the same operative facts* and must seek *the same relief.*" 27 F.3d at 1551. Two recent Federal Circuit decisions construing section 1500 are not to the contrary. *See E. Shawnee Tribe of Okla. v. United States,* 582 F.3d 1306 (Fed.Cir.2009); *Tohono O'odham Nation v. United States,* 559 F.3d 1284 (Fed. Cir.2009). In both cases, the Federal Circuit determined that the complaints filed in the district court and in the Court of Federal Claims requested different relief. *See E. Shawnee Tribe of Okla.,* 582 F.3d at 1308–10 (noting a prayer for equitable relief in the district court and money damages in the Court of Federal Claims); *Tohono O'odham Nation,* 559 F.3d at 1285–86 (noting that the district court action sought, among other things, an order compelling the government to provide a full and complete accounting of trust assets, while the Court of Federal Claims action sought money damages for the government's alleged breach of fiduciary duty). Because the Federal Circuit's analysis focused upon "the relief that the plaintiff *requests,*" *Tohono O'odham Nation,* 559 F.3d at 1291, section 1500 did not deprive the Court of Federal Claims of jurisdiction in either case.

As discussed in Part I, *supra,* plaintiff filed with the Eastern District of Arkansas a Sec-

ond Affidavit wherein he claimed, among other things, that he was falsely imprisoned and was entitled to $1.6 million "for every 24 Hour period of False imprisonment from date of arrest, to include IMMEDIATE RELEASE without Prejudice...." Compl. Ex. 2 at 3 (Second Affidavit ¶ 10). In his complaint, plaintiff seeks his "Immediate Release," Compl. 3, and the same monetary damages enumerated in his Second Affidavit, *compare* Compl. Ex. 1 at 3 (Definitions ¶ 16 (demanding $1.6 million per day since plaintiff's arrest)), *with* Compl. Ex. 2 at 3 (Second Affidavit ¶ 10 (alleging that the value of plaintiff's alleged "Contract" is $1.6 million per day for each day since his arrest)). It therefore appears that plaintiff's claim in this case and his appeal that was pending before the Eighth Circuit when plaintiff filed his complaint in the Court of Federal Claims arise out of the same operative facts and seek the same relief. As such, section 1500 divests the court of jurisdiction to entertain plaintiff's complaint.

## VII. CONCLUSION

For the reasons discussed above, plaintiff's application to proceed *in forma pauperis* is **DENIED,** the government's motion is **GRANTED,** and plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE.** The Clerk of Court is directed to enter judgment accordingly. Furthermore, plaintiff shall be assessed the court filing fee in accordance with the standards set forth in 28 U.S.C. § 1915. No costs.

**IT IS SO ORDERED.**