**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 09-1701

GARY DEWAYNE JOHNSON,

Plaintiff, Appellant,

v.

ROBERT THYNG, Unit Manager, NNHCF,
in his individual and official capacities,

Defendant, Appellee,

_____

ANGELA POULIN, Law Librarian, NNHCF,
in her individual and official capacities, et al.,

Defendants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

_____

Before

Torruella, Selya and Boudin,
Circuit Judges.

_____

Gary Dewayne Johnson on brief pro se.
Michael A. Delaney, Attorney General, and Danielle L. Pacik,
Assistant Attorney General, on brief for appellee.

_____

March 18, 2010

_____

**Per Curiam**.  Gary Dewayne Johnson appeals a district court judgment that determined that the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), barred his 42 U.S.C. § 1983 claim against prison officer, Robert Thyng, because Johnson had failed to exhaust all of his administrative remedies.  We affirm.

I.

In 2007, Johnson was incarcerated at New Hampshire's Northern Correctional Facility ("NCF").  That facility has a three level grievance process, each level corresponding to review by an increasingly higher office in the chain of command.  The first level of grievance is to the inmate's Unit Manager; the second level is to the Warden; and the third level is to the Commissioner.

On May 31, Johnson, who was convicted of a sexual assault on a minor, reported hearing "rumors" and threats like "When you least expect it Johnson" and "Filthy pedophile watch your back." Johnson filed a level one grievance, which said that, although he felt safe on "C Block," he did not feel safe outside, in the "chow hall", or in the hallway during "chow times."

On June 5, Johnson met with Officer Thyng and asked for protective custody.  According to Thyng, he informed Johnson that he would need to be segregated from the other inmates; he would be handcuffed for his own safety; and he would be brought to a segregation unit pending administrative review.  According to Thyng, he also explained that, to obtain protective custody,

-2-

Johnson would need to identify an inmate or inmates that he feared. Johnson reported that, although he heard the stated remarks, he was unable to identify any specific speaker because the remarks were always made behind his back and in a crowded area. Thyng determined that Johnson was not eligible for protective custody status due to a lack of verifiable information that Johnson was in danger of being physically harmed. Thereafter, Johnson signed a statement that said: "I feel safe on C block, as I have been there for the past year, and I wish not to move, and no pc [protective custody] at this moment."

Johnson, however, claimed that Thyng first denied his grievance and that, five minutes later, he was called back to Thyng's office where, under "duress and threat of being handcuffed," brought to "the tank," and losing his property, he was forced to write and sign the statement about not desiring protective custody status. On June 8, Johnson filed a level two grievance with Warden Blaisdell, complaining that Thyng had coerced that statement from him and reiterating his request for protective status.

On June 10, Johnson was threatened by inmate Carl Bickham in the chow hall. Johnson did not report this threat. On June 11, while in the chow hall, Bickham assaulted Johnson. Johnson was treated for a head laceration, a black eye, and a concussion.

According to Johnson, he suffered a detached retina which has required several surgeries and he continues to have problems.

In the wake of the assault, a protective custody board was convened on June 12. Johnson indicated that he feared for his safety as he believed that he was still susceptible to physical harm by Bickham. The board determined that NCF would transfer Bickham from NCF to the Concord state prison to serve punitive segregation and request that Bickham not be returned to NCF. Due to Bickham's transfer, the board determined that Johnson could remain at NCF and denied protective custody status.

On June 13, Johnson filed an "emergency" grievance with Commissioner Wrenn, contending that he had been assaulted on June 11 because of rumors that he suspected had been spread by staff and that he feared retaliation by staff. When he submitted this "emergency" grievance to Commissioner Wrenn on June 13, Johnson had not yet received Warden Blaisdell's response to his June 8th second level grievance. In his "emergency" grievance, Johnson asked the Commissioner for "help for relief" but also specifically remarked that "in no way will this grievance take the place of the actual grievance that will be submitted to you upon my receiving response from the warden and my [June 8th] second level grievance." Subsequently on that same day, Warden Blaisdell responded to Johnson's June 8th level two grievance, writing: "What is it that you actually want? Do you want to [sic] PC? Transfer out of

-4-

state?  If we have to PC you[,] that can be done if the criteria is there."

On June 19, Commissioner Wrenn replied to Johnson's June 13th "emergency" grievance, stating "Since this will not take the place of the actual grievance you will file after receiving a response from the warden, I will wait for the actual grievance before I reply."

Johnson never filed any further grievance with the Commissioner.

II.

Johnson, who had filed a § 1983 action in the federal district court prior to the assault, amended that action to include a claim that, in violation of the Eighth Amendment, Thyng had intentionally failed to protect Johnson from a known risk to his safety by Thyng's June 5th refusal of his request for protective custody.[1]  After a one-day bench trial, the district court concluded that this "failure to protect" claim was barred by a failure to exhaust administrative remedies, as required by PLRA as a condition precedent to suit.

PLRA provides:

---

[1]The district court disposed of the other claims against other defendants by way of summary judgment, leaving only the "failure to protect" claim against Thyng.  On appeal, Johnson raises no issues with respect to the district court's resolution of his other claims.  Accordingly, we omit any description and discussion of these other claims.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by the prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). We review, de novo, the dismissal of Johnson's § 1983 claim for failure to comply with PLRA's exhaustion requirement. Acosta v. United States Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006).

Exhaustion is mandatory, Woodford v. Ngo, 548 U.S. 81, 85 (2006), and "has a decidedly procedural emphasis," Booth v. Churner, 532 U.S. 731, 739 (2001). That is, what must be exhausted is the process, not the form of relief. Id. "All 'available' remedies must [] be exhausted; those remedies need not meet federal standards; nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner must exhaust administrative remedies before a complaint under § 1983 will be entertained even where the relief sought cannot be granted by the administrative process. Booth v. Churner, 532 U.S. at 734.

To properly exhaust administrative remedies, a prisoner must complete the prison grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id.

III.

Thyng argues that Johnson failed to exhaust his administrative remedies because he never completed the third level of the process by filing his grievance with the Commissioner. Johnson does not dispute that he did not complete the third level of the grievance process by filing his grievance with the Commissioner.[2] Instead, he argues that the third level of NCF's grievance process is not *mandatory*. His theory is that an optional level of administrative review need not be exhausted, that he has exhausted any mandatory component of the prison grievance system, and, therefore, he has complied with PLRA's requirement of exhaustion as a condition precedent to filing suit.

In support of his claim that the third level of NCF's grievance process is not mandatory, Johnson relies on what he views

_____

[2]We need not address Johnson's contention that Thyng interfered with his filing of his level two grievance with the warden. For purposes of determining whether Johnson had complied with the exhaustion requirement, the district court made several assumptions in Johnson's favor. First, there was some dispute as to whether Johnson used the proper grievance *form*. Johnson asserted that he used an "inmate request" form because Thyng would not give him a grievance form and threatened to retaliate against him. The district court accepted Johnson's contention as true for purposes of its analysis and further accepted, for purposes of analysis, that the fact that the grievance was filed on a request form, rather than a grievance form, was not determinative of whether Johnson had complied with the exhaustion requirement. Second, the court accepted Johnson's version of the facts regarding his compliance with the first and second levels of the grievance procedure and, so, assumed, in Johnson's favor, that he had complied with the grievance process through level two. We, too, make these same assumptions in Johnson's favor.

as permissive language in two documents: (1) the N.H. Department of Corrections Policy and Procedure Directive ("PPD") 1.16 IV C, says, in relevant part, "If an inmate is not satisfied with the Warden/Director's response, he/she **may** file an appeal using the grievance form, to the Commissioner's office" (emphasis added) and (2) NCF's Inmate Manual Section D.3, says, in relevant part, "if the Warden has not solved the problem with his/her response, a final grievance form **may** be sent to the Commissioner of Corrections" (emphasis added).

Whatever the merits of Johnson's contention that level three of the prison grievance process is optional, rather than mandatory, PLRA, nonetheless, speaks in terms of requiring that all "available" remedies be exhausted. See 42 U.S.C. § 1997e(a) ("No action shall be brought ... until such administrative remedies as are available are exhausted"); Porter v. Nussle, 534 U.S. at 524 ("All 'available' remedies must [] be exhausted."). A level three grievance directed to the Commissioner was "available," even if not mandatory. And, Johnson concedes he did not file one.

The emerging case law rejects Johnson's theory that an optional level of administrative review need not be exhausted for purposes of PLRA. For example, the Sixth Circuit in Owens v. Keeling, 461 F.3d 763 (6th Cir. 2006), concluded that the permissive language authorizing an appeal -- the prisoner "may

appeal" a classification action -- is irrelevant to the consideration of the exhaustion issue.

> "Although a remedy must be 'available' in order for a prisoner to be required to pursue it to exhaust his claim, ... this does not mean that the prison must *require* the prisoner to exhaust his remedies for the remedy to be 'available.' Generally, the prisoner would be free to choose not to exhaust his remedies; he would only be required to do so if he wants to file a complaint regarding the matter in federal court."

Id. at 770 n.4 (emphasis in the original; citations omitted). The Third Circuit concluded similarly in an unpublished decision. Davis v. Warman, 49 Fed. Appx. 365, 367-68 (3d. Cir. 2002). District courts, as well, in unpublished decisions, have rejected the argument that permissive language in a prison grievance procedure means that that procedure falls outside PLRA's exhaustion requirement. See, e.g., Warren v. Fort Dodge Corr. Facility, 2009 WL 1473955, at *3 (N.D. Iowa May 27, 2009); Braimah v. Shelton, 2005 WL 1331147, at *3 (D. Neb. May 20, 2005); Hope v. Velasco, 2004 WL 417198, at *2 (N.D. Ill. Feb. 23, 2004).

Any reliance on an earlier published district court opinion, In re Bayside Prison Litigation, 190 F.Supp.2d 755, 771-72 (D. N.J. 2002), for a contrary position is unwarranted in light of that court's subsequent disavowal of its conclusion as "clearly

erroneous." <u>In re Bayside Prison Litigation</u>, No. 97-cv-05127, slip op. at 8-9 (D. N.J. June 9, 2004).

Thus, even assuming that Johnson has correctly characterized the third level of NCF's grievance process as optional, and not mandatory, a level three grievance directed to the Commissioner was an "available" remedy for purposes of PLRA exhaustion. Johnson's concession that he did not file one dooms his § 1983 claim.

Johnson proffers an additional theory in support of his contention that he has complied with PLRA's requirement of exhaustion as a condition precedent to filing suit. Johnson points out that the prison transferred his assailant, Bickham, to another prison facility before the conclusion of the administrative grievance process. According to Johnson, since he achieved a favorable outcome, he did not need to appeal the Warden's decision to the Commissioner and his "available" remedies were, therefore, exhausted.[3] If, in fact, there was *no* pertinent additional relief

---

[3]At the bench trial, Johnson's explanation for his failure to complete the third level of grievance was somewhat different. He explained there that, because he had already been assaulted, he believed that filing that level of grievance would be futile. The district court rejected that rationale on the basis of <u>Booth</u> v. <u>Churner</u>, 532 U.S. at 741 n.6 (rejecting a "futility" exception and holding that PLRA mandates exhaustion despite the fact that the grievance process could not provide the inmate with money damages) and <u>Medina-Claudio</u> v. <u>Rodriguez-Mateo</u>, 292 F.3d 31, 35 (1st Cir. 2002) (holding that inmate must exhaust administrative remedies at the first prison facility even if transferred to a different facility).
Defendant Thyng argues that Johnson's current explanation,

-10-

obtainable through the grievance process, further exhaustion might be excused.  See Booth v. Churner, 532 U.S. at 736 (holding that administrative remedies remain "available" and must be exhausted so long as the administrative process has authority to take *some* action in response to a complaint, even if not the remedial action the inmate demands) (emphasis added); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005) (concluding that Booth made clear that exhaustion is not required when *no* pertinent relief can be obtained through the administrative process) (emphasis added).

Johnson's current claim of being satisfied with the prison transfer of Bickham, however, conflicts with the record. For example, on June 13, two days after the assault by Bickham, Johnson wrote to Thyng stating that, even though Bickham had been sent to another facility, he did not feel safe because of "ongoing threats and rumors from Mr. Bickum [sic] friends and other inmates." Johnson's district court filings, as well, contradict Johnson's current contention that he was satisfied with the transfer of Bickham.  On July 17, Johnson wrote to the district court, contending that he was "still afraid for [his] life."  And, in

i.e., that he was "satisfied" with the prison's response of transferring Bickham, was not raised in the district court and is, therefore, waived.  As Johnson is pro se, we may grant him some leeway as to whether his current claim of being "satisfied" by the transfer is but another way of describing the circumstances in the wake of the assault.  In any event, we need not rely on the waiver argument as, for the reasons stated in the text, Johnson's contention lacks merit.

response to Thyng's motion for summary judgment, Johnson claimed that, at the protective custody board when he was informed that Bickham had been transferred, he responded: "What about the other inmates that are after me or have heard the rumors?  What about [Bickham's] brother that [sic] lives on D-Block?"  It is evident that, contrary to Johnson's current assertion, he was not satisfied with the prison transfer of Bickham.  And, in any event, Bickham's transfer to a different facility did not constitute the only available relief, such that the administrative process could provide no other pertinent relief.  Given that Johnson persisted in claiming the existence of threats from other inmates, the level three of the grievance process was available to provide a remedy to relieve those threats, apart from the transfer of Bickham. Johnson's failure to exhaust this level of the grievance process precludes his current federal court claim.  See Ruggiero v. County of Orange, 467 F.3d 170, 177 (2d Cir. 2006) (dismissal of § 1983 action affirmed for failure to exhaust where inmate's transfer to another prison, while arguably providing him with relief by separating him from officers who allegedly mistreated him, did not provide him with all of the relief available to him, since a formal grievance might have resulted in developing policies and procedures pertaining to the grievance of disciplining the officers).

IV.

The judgment of the district court, entered on May 8, 2009, is <u>affirmed</u>.