Eric **BARBOSA–ORONA**, Plaintiff,

v.

Juan **FLORES–DASTA**,
et al., Defendants.

Civil No. 10–2267 (DRD).

United States District Court,
D. Puerto Rico.

Feb. 15, 2012.

and Rehabilitation Administration. Plaintiff alleges that prison officials forcibly administered a haircut to Plaintiff violating his religious beliefs. Plaintiff also contends that he is a victim of gender discrimination as female inmates are permitted to have longer hair than male inmates. Plaintiff additionally avers that his visitation rights were suspended without the benefit of a grievance procedure thereby violating his due process rights. We construe[1] Plaintiff's Section 1983 complaint to include a First Amendment claim under the Free Exercise Clause for violations of his religious freedom; an Eighth Amendment claim for Defendants' allegedly excessive force and failure to train the corrections officers, thus constituting cruel and unusual punishment; an Equal Protection Clause claim premised upon gender discrimination; and finally, a Fourteenth Amendment claim for violations of his procedural due process.

Eric Barbosa–Orona, Ponce, PR, pro se.

Idza Diaz–Rivera, P.R. Department of Justice–Federal Litigation, San Juan, PR, for Defendants.

### OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Plaintiff Eric Barbosa–Orona, a prisoner in a state institution, filed the instant suit under 42 U.S.C. § 1983 against Defendants Juan Flores–Dasta, First Lieutenant assigned to the Ponce Principal Correctional Facility, and Carlos Molina–Rodriguez, Secretary of the Corrections

## I. FACTUAL & PROCEDURAL HISTORY

On June 9, 2010, while Plaintiff was an inmate in a state prison facility, Bayamon 501 Institution, his visitation rights were suspended allegedly due to his long hair. Plaintiff filed a complaint under the prison grievance procedure alleging civil rights violations and violations of procedural due process.

In September of 2010, Plaintiff was transferred to the Ponce Principal Institution. Shortly after Plaintiff's arrival, he was surrounded by seven or eight guards and ordered to sit in a chair for a haircut. He "refused and explained [that he] had made a vow to God for a blessing." (Dock-

---

1. Plaintiff's pleadings are very articulate and well-drafted; thus, Plaintiff needs no help from the Court in making his arguments. However, as Plaintiff is pro-se, the Court will grant Plaintiff's complaint "a liberal reading." *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 13 (1st Cir.2004); *see Boivin v. Black,* 225 F.3d 36, 43 (1st Cir.2000) ("courts hold pro se pleadings to less demanding standards than those drafted by lawyers").

et No. 27). The guards asked what religion Plaintiff was and Plaintiff responded Catholic.

Later, Lieutenant Flores gave an order for the guards to cut Plaintiff's hair by force. Plaintiff stated to the guards that they were violating his civil rights; requested to speak the superintendent; and that if there was a civil rights infraction, to have the opportunity to make a written complaint. Plaintiff further requested that the corrections officers not use force. While Plaintiff was speaking, an officer jumped from behind Plaintiff and grabbed him around the neck and chest. Other officers joined in and brought Plaintiff to the floor. One officer had his knees on Plaintiff's back and Plaintiff was then handcuffed. Another officer entered the room with the electric clippers and proceeded to cut Plaintiff's hair while other guards held Plaintiff's face and neck. The guards took photographs of Plaintiff lying on the floor with cut hair all around him.

The same day, Plaintiff was treated by a doctor for contusions and given pain reduction medication.

Plaintiff avers that the officers' action reveal excessive brutality and that they were trained improperly. Plaintiff maintains that he washes every day and keeps clean. Further, Plaintiff posits that he behaves well, has a good attitude towards the guards, employees, other inmates and generally stays out of trouble.

Defendant Flores and Molina, separately, moved the Court to dismiss Plaintiff's petition (Docket Nos. 13 and 21), asserting, *inter alia*, that Plaintiff failed to exhaust his administrative remedies.

On September 13, 2011, Plaintiff filed a motion (Docket No. 24) informing the Court that the corrections officers issued a threat to forcibly cut Plaintiff's hair again. Plaintiff thus requested that the Court issue a cease and desist order.[2]

On December 29, 2011, the Court issued an *Order to Show Cause* (Docket No. 28) ordering that Defendants show what, if any, administrative procedures Plaintiff has pursued and to explain in further detail the proper administrative channels and levels Plaintiff must, and should have, exhausted. The Court also granted Plaintiff leave to address the Court's concerns as well; however, the Court stressed that it is Defendants' burden to demonstrate Plaintiff's failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

On January 25, 2012, Plaintiff filed a motion regarding exhaustion (Docket No. 30) stating that Plaintiff filed two different administrative complaints and that he filed an appeal to the board of appeals. Plaintiff also avers that Plaintiff's "efforts to get a judicial review were frustrated by correctional officials who did not provide— due to [Plaintiff's] long hair—library services to make a proper petition to the court." (Docket No. 30).

On February 1, 2012, Defendants complied with the Court's show cause order (Docket No. 32). Therein, Defendants state that Plaintiff filed his first grievance on June 18, 2010 alleging that his visitations privileges were suspended due to his long hair. Plaintiff received an adverse ruling by the examining officer stating that Plaintiff needed to maintain a presentable appearance in order to receive privileges. Plaintiff did not request a review of the examining officer's determination.

---

**2.** The Court hereby **NOTES**, and **DENIES**, Plaintiff's request for an order (Docket No. 24) for the reasons stated herein.

On July 8, 2010, Plaintiff filed a second grievance, again alleging that his visitations rights were suspended due to his long hair; again, Plaintiff received another adverse ruling from the examining officer which explained that Plaintiff needed to keep a suitable appearance. Plaintiff subsequently requested an Administration Review of the examining officer's decision. The Administration Review, conducted by the Appeals Board, resulted in a Resolution confirming the examining officer's determination.

Defendants assert that Plaintiff did not initiate any administrative procedure regarding the alleged excessive force used by the correctional officers and thus Plaintiff clearly failed to exhaust his administrative remedies with regard to that allegation. Additionally, Defendants advance that Plaintiff did not fully exhaust his administrative procedure regarding any of his claims as proper exhaustion includes judicial review by the Commonwealth Court of Appeals and the Supreme Court of Puerto Rico before a complaint may be properly heard in federal district court.

## II. MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ")(quoting

*Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 129 S.Ct. at 1949–1950 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 129 S.Ct. at 1940. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.' " *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon

which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950(quoting Fed. R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 1950–51 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez,* 640 F.3d at 12, (citing *Iqbal,* 129 S.Ct. at 1950).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Iqbal,* 129 S.Ct. at 1950); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has em-

phasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal,* 129 S.Ct. at 1951 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

## III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, "a prisoner must complete the administrative review process in accordance with the

applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Exhaustion is mandatory." *Johnson v. Thyng,* 369 Fed. Appx. 144, 146 (1st Cir.2010)(unpublished)(citing *Woodford,* 548 U.S. at 85, 126 S.Ct. 2378); *Casanova v. Dubois,* 2002 U.S. Dist. LEXIS 13264 at *2–3, 2002 WL 1613715 at *6 (D.Mass. July 22, 2002)(the "exhaustion requirement ... is a condition precedent of federal relief."). The U.S. Supreme Court has stated that:

> All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit .... *[s]tate prisoners must exhaust administrative processes prior to instituting a § 1983 suit.*

*Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(internal citations and quotations omitted)(emphasis added); *see Berríos v. Gonzalez–Rosario,* 630 F.3d 7, 11 (1st Cir.2010)(remanding to the District Court in order to conduct additional fact-finding as to whether the PLRA's exhaustion requirement was met).

■ The "boundaries of proper exhaustion" are determined not by the PLRA but by the prison system's own procedural requirements. *Jones,* 549 U.S. at 218, 127 S.Ct. 910. Hence, the Court must examine Puerto Rico's penal system's internal grievance procedures.

The procedure by which a member of the Puerto Rico correctional population can seek administrative remedies consists of five tiers of review. First, to initiate the grievance process, a prisoner must file a petition. The prisoner's petition is then reviewed by an evaluator, who must determine whether further investigation is necessary, and respond to the petitioner accordingly. If the evaluator determines that further investigation is warranted, he may refer the matter to the program director, who "shall ... notify the Corrections Administrator so that it may order an administrative investigation of the facts...." [Docket No. 32–1, page 16]. The results of the investigation are to be communicated to the petitioner. Next, once the petitioner receives a response from the evaluator, he may appeal by moving for review within fifteen days of receiving the evaluator's response if he "disagrees with the reply issued." [Docket No. 32–1, page 21] If the petitioner takes this step, the evaluator must send the file to the regional coordinator, who has thirty days from the filing of the motion for review to issue a resolution. Next, should the petitioner continue to remain unsatisfied with the regional coordinator's resolution, he may file a motion, within twenty working days after receiving the regional coordinator's resolution, to request that the regional coordinator reconsider the case. Then, if the petitioner still remains unsatisfied with the regional coordinator's response to his motion, he may appeal by submitting a written request to the program director within fifteen days after receiving notice of the regional coordinator's decision. The program director then has thirty days to issue a resolution to the petitioner. Finally, if the petitioner continues to remain displeased with the program director's resolution, he may request judicial review before the Puerto Rico Court of Appeals.

*Cruz–Berrios v. Oliver–Baez,* 792 F.Supp.2d 224, 228–229 (D.P.R.2011) (internal citations omitted).

■ The record is clear that Plaintiff has not exhausted the aforementioned administrative remedies and certainly not re-

quested judicial review before the Puerto Rico Court of Appeals.[3] Given that exhaustion of available administrative remedies is mandatory under the PLRA, Plaintiff's failure to exhaust available remedies mandates dismissal of the pending controversy.

## IV.  CONCLUSION

The freedom to practice one's own religion is as sacred as religion itself in these United States of America. Even prior to the First Amendment being enacted, George Washington wrote that "the Government of the United States ... gives to bigotry no sanction, to persecution no assistance...." Letter to the Hebrew Congregation at Newport, August 1790. George Washington's words are as true today as they were in 1790. Our holding, requiring proper exhaustion of administrative channels before proceeding to federal district court, furthers Congress', as well as the Puerto Rico legislature's, policy of judicial economy; our holding should not be read as infringing upon any citizen's fundamental right to freedom of religion. Indeed, we clarify that we offer no opinion on the merits of Plaintiff's allegations.[4]

As Defendants have successfully carried their burden to demonstrate that Plaintiff

did not exhaust all available administrative remedies before commencing the instant federal action as required by the PLRA, Defendants' motions to dismiss (Docket Nos. 13 and 19) are hereby **GRANTED** and thus Plaintiffs' Section 1983 claim is hereby **DISMISSED WITH PREJUDICE.** 42 U.S.C. § 1997e(a); *Jones,* 549 U.S. at 216, 127 S.Ct. 910. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

**3.** Plaintiff states that his "efforts to get a judicial review were frustrated by correctional officials who did not provide-due to [his] long hair-library services to make a proper petition to the court." (Docket No. 30). We find this excuse unavailing as, even if Plaintiff was denied access to the computer in the library, Plaintiff was still permitted to hand write his appeal and avail himself of the penitentiary's administrative review process.

**4.** While the Court stresses that it makes no determination on the merits of Plaintiff's grievances alleged herein, the Court does wish to alert the parties to the recent First Circuit case of *Kuperman v. Wrenn,* 645 F.3d 69 (1st Cir.2011). In *Kuperman,* an Orthodox Jewish state prison inmate filed a complaint alleging that he should not be required to

shave due to his religious beliefs. The First Circuit held, *inter alia,* that the prison regulation mandating that inmates shave was a permissible restriction of Kuperman's First Amendment rights because the regulation is "reasonably related to legitimate penological interests." *Kuperman,* 645 F.3d at 74 (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Additionally, the Circuit Court found that Kuperman could not proceed to trial on his equal protection claim because Kuperman had produced insufficient evidence to demonstrate that "based on his religion, he was treated differently from other similarly situated inmates with regard to shaving." *Kuperman,* 645 F.3d at 78.